BYERS TRANSP. CO. et al. v. UNITED STATES et al.

No. 1248.

District Court, W. D. Missouri, W. D.

Nov. 14, 1942.

Action by Byers Transportation Company and others against United States of America and others to enjoin enforcement of an order of the Interstate Commerce Commission transferring operating rights from one certificated motor carrier to another.

Before JOHNSEN, Circuit Judge, and OTIS and COLLET, District Judges.

Leo B. Parker and Lowell L. Knipmeyer, both of Kansas City, Mo., for plaintiffs.

Robert L. Pierce, Sp. Asst. to Atty. Gen., Thurman Arnold, Asst. Atty. Gen., and Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., for defendant United States.

Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, and E. M. Reidy, Asst. Chief Counsel, Interstate Commerce Commission, both of Washington, D. C., for defendant Interstate Commerce Commission.

Lee Reeder, of Kansas City, Mo., for defendants Powell Brothers Truck Lines, Inc., and John B. Bryan.

COLLET, District Judge.

Plaintiffs seek to enjoin the enforcement of an order of the Interstate Commerce Commission transferring operating rights from one certificated motor carrier to another.

Bryan, the owner of a certificate authorizing operation in interstate commerce as a motor carrier, proposes to sell and transfer his certificate to Powell Brothers Truck Lines, Inc. Bryan's certificate describes two separate operations and routes which combined embrace the entire length of U. S. Highway 40, east and west across Missouri with a short appendage running south from Highway 40 common to both separately described routes and altogether forming a letter T with a much abbreviated stem.

For present purposes, plaintiffs, who are regular route operators over U. S. Highway 40, concede that Bryan's certificate, issued in 1939, authorized through service by him from the extreme western terminus of the western route (Bunceton, Bryan's home, to Kansas City, Kansas), to the extreme eastern terminus of the eastern route (Bunceton to National Stock Yards, Illinois), but Bryan has never so used his authority and has never transported anything under it between points on the different routes. While there is some doubt concerning the fact, it is probable that Bryan has never assumed that his certificate authorized through service between points on the separately described routes. He consistently operated from Bunceton, at the lower terminus of the stem of the T, to Kansas City, Missouri, and Kansas City, Kansas, and returned to Bunceton as one separate operation, and has always operated from Bunceton to St. Louis, Missouri, East St. Louis, Illinois, and the National Stock Yards, Illinois, and back to Bunceton as his other operation.

Powell, the proposed vendee of Bryan's certificate, is a much more extensive operator. It operates from Chicago to St. Louis, thence southwest to Springfield, Mo., thence south and southwest to points beyond Missouri. It also has authority to operate from Springfield, Mo., to Kansas City, Mo. Reference to a map of this region will disclose that if Powell could obtain authority to operate from St. Louis to Kansas City, Mo., such operation would constitute the hypotenuse of the triangle with St. Louis at the eastern terminus, Springfield, Mo., at the southern and Kansas City at the western terminus of the triangle. Powell has transported some freight between Kansas City and St. Louis via Springfield. It would like to transport more between the former cities, but along the direct route over U. S. 40. Powell sought authority to operate directly between Kansas City and St. Louis in a separate application but failed to establish convenience and necessity and was denied. By the purchase of Bryan's certificate Powell seeks to acquire the right to operate

between Kansas City and St. Louis without a showing of convenience and necessity.

Bryan and Powell joined in an application to the Commission for the transfer of Bryan's operating rights to Powell. Facts appearing in the record before us indicate that this application alleged facts which would justify the transfer of the certificate on the ground that such transfer was consistent with the public interest. If the application had stopped there and the evidence had been likewise restricted, our present problem would not exist, for it is conceded that the formal transfer of the certificate is justified. In fact, there is no objection to an order limited to a mere transfer of Bryan's existing rights.

But in the joint application for the transfer Powell boldly asserted that its reason for acquiring Bryan's certificate was to secure the right to operate directly between Kansas City and St. Louis over U. S. Highway 40. And apparently it formally requested the right so to do. (The original application is not before us. However, many references to it appear in the record).

The request for approval of Powell's intention to render through service provoked many protests from carriers operating over U. S. Highway 40, including the present plaintiffs. The tenor of the protests, then and now, indicates considerable agony on the part of the protestants at the prospect of a new face, or more accurately speaking, a new and larger truck, on their Highway 40.

The protestants alleged an absence of convenience and necessity for the assertedly new through operation. They charged that Bryan had never so operated and that even should his certificate be construed as covering that authority, he had never exercised it, and hence had never actually come into possession of the right for want of ever having exercised it, or, if it should be held to have been acquired without actual user, that he has long since lost it by abandonment.

If the Commission had clearly cast aside these latter questions—Powell's request for through operating rights as surplusage, and the protests as equally immaterial to the question of formal transfer of Bryan's existing rights—whatever the latter might be, our approval of the order of transfer would follow. But in numerous other cases before the Commission in which the applications sought the transfer of operating rights under Section 5, 49 U.S.C.A. § 5, the Commission had considered the question of whether rights granted under the certificate sought to be transferred had ceased to exist by reason of non-user, abandonment or related causes. Andrew B. Crichton-Purchase-C. Lawrence Lavine, 35 M.C.C. 661; William C. Barry-Purchase-Frank D. Hunt, 36 M.C.C. 335; McFarland & Stample Trucking Co.-Purchase-George H. Carpenter, 36 M.C.C. 459; Kist Truck Line Inc.-Purchase-Everett F. Albaugh, 37 M.C.C. 313; Gustave Robertson-Purchase-City Transfer Co., 36 M.C.C. 569; Silver Fleet Motor Express Inc.-Purchase-Germann Bros. Motor Transportation Co., 1 Federal Carrier Cases, 552 (not reported in Motor Carrier Cases). There was ample justification, therefore, for the assumption by the protestants that the Commission could, and possibly would, under the pending application determine the present existence of Bryan's authority to render through service and whether that right would pass to Powell by the contemplated transfer.

Under the circumstances heretofore related the Commission ordered the transfer of Bryan's operating rights, and, taking cognizance of protestants' (plaintiffs herein) objections in its report, passed upon those objections in the following language:

"Protestants operate as motor-vehicle common carriers between St. Louis and Kansas City, Mo., over U. S. Highway 40, the identical route over which Powell desires to operate through the instant unification. They contend that Bryan was granted rights to operate between central Missouri points and (1) St. Louis-East St. Louis, and (2) Kansas City, Mo.-Kan.; that these are separate operations; that Bryan was not granted rights to operate over U. S. Highway 40 between St. Louis and Kansas City, but, if the order of June 5, 1939, did include such authority, Bryan has discontinued such operations; and that Powell should not be permitted to render service over U. S. Highway 40 in the manner proposed without establishing that the public convenience and necessity require the new operation. Although Bryan has never conducted operations between East St. Louis-St. Louis and Kansas City, Mo.-Kan., over U. S. Highway 40, in our opinion he was granted the right to conduct such operations by the order of June 5, 1939. Therefore, the operations by Powell in the manner proposed would not broaden the authority as granted to Bryan.

"We find that purchase by Powell Bros. Truck Lines, Inc., of the operating rights and property of John B. Bryan, doing business as John B. Bryan Truck Line, * * * is a transaction within the scope of Section 5(2) (a), and will be consistent with the public interest, and that, if the transaction is consummated, Powell Bros. Truck Lines, Inc., will be entitled to a certificate covering the rights confirmed in (Bryan's certificate) which rights are herein authorized to be unified with rights otherwise confirmed in Powell Bros. Truck Lines, Inc. * * *."

Instances have arisen in the past wherein application for transfer of a certificate under Section 5, supra, was before the Commission and the actual existence of the rights sought to be transferred was or might be questioned. In some such instances the Commission has expressly reserved a decision on what the existing rights actually were. See Wilson Truck Co. Inc.-Purchase-Smith, 25 M.C.C. 150,[1] and Smith Brothers, Sandidge Receiver, Revocation of Certificate, 3 Federal Carrier Cases, Pars. 30, 265, 22 M.C.C. 524, 26 M.C.C. 219.

While the Commission did in the order now before us limit the effect of the order to operating rights expressly determined under Section 5, supra,[2] there was no express reservation of a decision as to nonuser or abandonment with attendant uncertainty concerning the determination or nondetermination of those questions.

The decision of the Commission in Smith Brothers, Sandidge Receiver, Revocation of Certificate, supra, that a certificate once issued may be terminated only by a formal proceeding in accordance with Section 212, 49 U.S.C.A. § 312, gives considerable force to the contention that a decision concerning a lapse of Bryan's original right to give through service was reserved. But if we assume that, by the language of the order now under consideration (set out in the margin), the Commission restricted the effect of its order to the formal transfer of such operating rights as might exist without determining whether rights previously existent had lapsed, there remains the troublesome uncertainty as to whether the Commission intended to hold that it had the power under Section 5, supra, to order and was ordering through service over connecting segments of existing routes, in the public interest, without regard to the presence or absence of a preexisting express authority to render through service. If it be assumed that Section 5 grants the power to the Commission to order through service between connecting routes in the public interest when that through service had not been theretofore authorized under the "Grandfather Clause" or on the ground of public convenience and necessity, the exercise of that power in a specific case would require the application of the advised judgment of the Commission in its exclusive field. Certainly, a Court should not pass upon the power of the Commission to make such an order under Section 5, and whether there was evidentiary justification therefor, unless it was clearly apparent that it had exercised that power.

Proper co-ordination of the power of review by the Courts with the exercise of the Commission's functions in its specialized field justifies the remanding of a cause where the intended effect of the latter's order is in doubt or the basis therefor is uncertain. See Phelps Dodge Corporation v. National Labor Relations Board, 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271, 133 A.L.R. 1217. As stated in Twin City Milk Producers Ass'n v. McNutt, 8 Cir., 122 F.2d 564, 567: "If official action actually rests upon a proper basis, and the recitations necessary to demonstrate this fact have simply been inadvertently omitted, there is no sound reason why this ought not to be permitted to be shown. Certainly, judicial responsibility to the public interest, as well as Congressional intent, will be more effectively serv-

---

[1] "Protestants contend that operations by vendors have been abandoned, although vendors possess a certificate issued by us. It may be assumed that the question of abandonment of these operations will be fully developed at such time as action is taken on protestants' complaint dated February 7, 1939, seeking revocation under section 212(a) of vendors' certificate. Our finding in the instant proceeding is without prejudice to such action as subsequently may be taken in connection with said complaint, and pending the outcome thereof no order will be entered herein." 25 M.C.C. 150, 151.

[2] "And it is further ordered, That nothing herein contained shall be construed as a determination of the operating rights of any person or persons under any section of the act, except section 5 thereof, as expressly determined herein."

ed in this manner than by unnecessarily delaying administrative action and inviting repetitive litigation." See also Volume 42, American Jurisprudence, pp. 689–691.

The same principles which justify the remanding of a cause should authorize us to hold in abeyance our judgment in an independent action which is actually a proceeding for review, in order to permit a clarification of the issues we must determine.

In our judgment it is necessary to the proper determination of the cause pending in this Court that the Commission's Report or Order disclose whether the determination of the question of non-user and abandonment was reserved, or, if not reserved, whether it was the Commission's conclusion that non-user or abandonment had not been shown, and the factual basis therefor, or whether the Order of the Commission was based upon the theory that through service should be ordered over both segments of separate connecting routes in the public interest without regard to the existence or non-existence of such authority.

We, therefore, reserve our judgment in this cause for a period of ninety days. Permission is granted to the Commission to submit such supplemental Report and Order as its advised judgment may deem appropriate and proper.