GARFORD TRUCKING, Inc., v. UNITED STATES et al.

Civ. A. No. 4263.

District Court, D. New Jersey.

March 2, 1946.

Before McLAUGHLIN, Circuit Judge, and FAKE and FORMAN, District Judges.

George L. Burton, of South River, N. J. (E. B. Ussery, J. Earl Hummer, Charles V. Guthrie, and A. Lane Cricher, all of Washington, D. C., of counsel), for plaintiff.

Edgar H. Rossbach, U.S. Atty., of Newark, N. J. (Wendel Berge, Asst. Atty. Gen., and Edward Dumbauld, and David O. Mathews, Sp. Assts. to Atty. Gen., of counsel), for U. S.

Allen Crenshaw, of Washington, D. C. (Daniel W. Knowlton, of Washington, D. C., Chief Counsel, Interstate Commerce Commission, of counsel), for Interstate Commerce Commission.

FORMAN, District Judge.

The plaintiff, Garford Trucking, Incorporated, is a motor carrier. On October 1, 1938, the Interstate Commerce Commission on its "grandfather" application (Docket Mc-1091) pursuant to 49 U.S.C.A. § 306(a), granted it a certificate of public convenience and necessity authorizing the transportation of general commodities, with certain exceptions, over irregular routes (9 M.C.C. 672).

On March 23, 1939, the Commission, upon the petition of certain protestants, set aside its order of October 1, 1938 and reopened the whole matter for oral argument and reconsideration. On April 8, 1940, Division 5 of the Commission filed its report and order (22 M.C.C. 569). Thereafter the plaintiff made application to the Commission to stay the effective date of said order and to allow it a further hearing. This application was granted by Division 5 on June 20, 1940. Subsequently an Examiner held hearings and filed his report and recommended order copies of which were served on August 18, 1942. Exceptions were filed thereto by plaintiff and protestants. After consideration of the exceptions, Division 5, on November 26, 1943 rendered a decision and entered a third order on this "grandfather" application, which modified the second order, dated April 8, 1940, and authorized plaintiff to transport general commodities, with certain exceptions, over irregular routes. The decision and order are unreported.

The order set forth in detail three separate zones of operation.[1]

The first, considered as "base territory", included all points in the New York Commercial Zone, Hudson, Essex and Union Counties, N.J., and points in Bergen and Passaic Counties, N.J., on and east of U. S. Highway 202, and points in Middlesex County, N.J., on and north of New Jersey Highway S-28. Plaintiff's home terminal, South River, N.J., is located centrally in this zone.

The second zone included irregular routes between any and all points in the "base territory" on the one hand, and on the other, Providence, R.I., points in specified territories in Massachusetts (including the Boston Commercial Zone), and Connecticut, and in Orange, Rockland and Westchester Counties, N.Y. This area was generally north of the "base territory." The second zone also included irregular routes between points in the "base territory" and points to the south in specified territories in New Jersey, outside of the "base territory". Delaware, Eastern Pennsylvania (including Philadelphia), Baltimore, Md., and Washington, D.C. The authority granted plaintiff to operate in this zone was in the nature of irregular-route radial-service. (See Classification of Motor Carriers of Property, 2 M.C.C. 709.)

The third zone included routes between Trenton, N.J., on the one hand, and on the other, Scranton, Pa., Baltimore, Md., Washington, D.C., and points in Westchester County, N.Y., outside of the New York Commercial Zone.

No language of the order of the Commission granted the plaintiff the right to cross-haul freight between points in the northerly area of the radial territory and points in the southerly radial area through any point in the "base territory".

Plaintiff was aggrieved by this order and again petitioned the Commission to reopen and reconsider the matter. In its petition, dated January 12, 1944, it alleged: "Applicant does not question the territorial limitations as found by Division 5, and accepts them in order that this litigation might come to a close from a territorial or area standpoint. However, it questions the inference, created by the decision of Division 5, to the effect that it cannot continue to render through transportation service between points in the 'trunk-line' area which it is authorized to serve to and from the 'base' territory and points in 'New England' territory which it is authorized to serve to and from the same identical 'base' territory. If it was the intent of Division 5 to prohibit such transportation service, then it is the position of applicant that the Division

[1] "1. Between all points in the territory consisting of points in New York in the New York Commercial Zone as defined in New York, N. Y., Commercial Zone, 1 M.C.C. 665, those in Hudson, Essex, and Union Counties, N. J., those in Bergen and Passaic Counties, N. J., on and east of U. S. Highway 202, and those in Middlesex County, N. J., on and north of New Jersey Highway S–28.

"2. Between points in the territory set forth in (1) above, on the one hand, and, on the other, Providence, R. I., Baltimore, Md., and Washington, D. C., points in that portion of Massachusetts on and east of U. S. Highway 5 from the Massachusetts-Connecticut State line to Northampton, Mass., thence on and south of Massachusetts Highway 9 to its junction with U. S. Highway 20; thence on and south of U. S. Highway 20 to Boston, Mass., thence on and west of U. S. Highway 1 from Boston to the Massachusetts-Rhode Island State Line, including all points in the Boston commercial zone as defined in Boston, Mass., Commercial Zone, 31 M.C.C. 405; points in that portion of Connecticut on and south of U. S. Highway 6; points in Orange, Rockland, and Westchester Counties, N. Y.,

points in that portion of New Jersey on, east, and south of U. S. Highway 202 from the New Jersey-New York State line to its junction with U. S. Highway 206, thence on and, east of U. S. Highway 206 to Trenton, and on, north, and west of U. S. Highway 130 from Penns Grove, N. J., to its junction with New Jersey Highway 33, and thence on and north of New Jersey Highway 33 to the Atlantic Ocean at Ocean Grove, N. J., except that portion of New Jersey described in (1), above; points in that portion of Delaware on and north of U. S. Highway 40; and points in Pennsylvania east of the Susquehanna River from the Pennsylvania-Maryland State Line to its junction with U. S. Highway 11 at Pittston, Pa., thence on and east of U. S. Highway 11 to Scranton, Pa., thence on, west, and south of U. S. Highway 611 from Scranton to the Pennsylvania-New Jersey State line at Portland, Pa.

"3. Between Trenton, N. J., on the one hand, and, on the other, Scranton, Pa., Baltimore, Md., Washington, D. C., and those points in Westchester County, N. Y., other than those in the New York commercial zone as defined in (1) above."

erred as a matter of fact and of law. In order to protect its future operations, applicant must, for the purposes of this petition, assume that it was the intention of Division 5 to order the discontinuance of the described through transportation service."

On October 9, 1944 the Commission denied plaintiff's petition for reconsideration without stating its reason for such action.

On November 27, 1944, the plaintiff filed its complaint in this court, pursuant to the provisions of 28 U.S.C.A. §§ 41(28), 43-48 and 49 U.S.C.A. §§ 17(9) and 305(g), wherein it prays, among other things: "(4) That the Court make its order setting aside the said order of November 26, 1943, above described and set forth in Exhibit C hereof, and remanding the application of the plaintiff for a certificate to operate as a common carrier to which said order of November 26, 1943, relates, to the Interstate Commerce Commission for further proceedings in conformity with the decision and judgment of the Court in the within proceeding;"

As a basis for this relief it alleges in Paragraph VII of its complaint that the Commission denied to it the right to continue the transportation of general commodity traffic between points in New England territory on the one hand, and on the other, points situate in the states of New Jersey, Pennsylvania, Delaware and Maryland, via plaintiff's home terminal, situate at South River, N.J., even though the plaintiff had performed said transportation service prior to June 1, 1935.

In paragraphs VIII and IX it alleged: "That the Commission, in its first and second decisions of February 1, 1938, and April 8, 1940, respectively, clearly recognized the fact that applicant rendered a through transportation service between points in New England on the one hand, and points in trunk line territory, on the other hand, through the territory described as 'base' territory in the decision dated November 26, 1943; that the Commission also clearly applied the principles announced by the Commission in Powell Bros. Truck Line, Inc., case, decided February 8, 1943, a copy of which is attached hereto as Appendix F, and made a part hereof, for it granted authority to continue the through transportation service between points in trunk line territory, on the one hand and New England territory, on the other hand; that at the time plaintiff filed its petition, dated January 12, 1944, there was pending before the Commission, petition of G & M Motor Transfer Co., irregular route carrier, praying interpretation of the certificate which had theretofore been issued it by the Commission; that said Commission postponed action on plaintiff's petition, dated January 12, 1944, until decision was rendered on the G & M Motor Transfer Co. case on July 10, 1944; that a copy of the same is attached hereto as Appendix G and made a part hereof; that the said Commission subsequently on October 9, 1944, denied plaintiff's petition dated January 12, 1944, without statement of reasons; that the Commission applied the principles announced in the G & M Motor Transfer Co. case in denying plaintiff's petition of January 12, 1944; that the facts in the said G & M Motor Transfer Co. case differ materially from the facts in plaintiff's case; that the principle applied in the said G & M Motor Transfer Co. case, in interpreting certificates of irregular route carriers, is directly opposed to that applied in interpreting certificates of regular route carriers (See Powell Bros. Truck Lines case); that the facts in the said G & M Motor Transfer Co. case differ materially from the facts in the instant case; and that none of the facts in this instant case have been or could have been, taken into consideration in the decision announced in the G & M Motor Transfer case.

"That the said Interstate Commerce Commission in issuing its order of November 26, 1943, denying in part the said application dated December 31, 1935, as amended, to the extent stated in paragraph VII above, ignored material evidence and acted in an arbitrary, capricious and unreasonable manner; that the said Commission incorrectly applied to the facts which it found, the statutory provisions and Congressional intentions relating to 'grandfather' rights of common carriers by motor vehicle; that the Commission applied the principle of interpretation in connection with certificates of so-called irregular route carriers directly opposed to that applied in connection with regular route carriers; that the Commission applied the principle of interpretation, arrived at in another case, where the facts were materially different, to the instant case; and that the Commission in so doing erred as a matter of law."

The case was submitted to the court upon the argument of counsel and the record and evidence taken in the proceedings before the Commission.

Plaintiff does not question the territorial limitations as fixed by the order of November 26, 1943. Therefore our first task is to examine the record and evidence to determine whether the Commission ignored material evidence and acted in an arbitrary, capricious and unreasonable manner, as alleged in paragraphs VII and IX of the complaint.

■ The character of the proof necessary to establish a historic basis for the grant of the privilege under the "grandfather" clause is thus described in United States v. Carolina Carriers Corp., 315 U.S. 475, at pages 480, 481, 62 S.Ct. 722, 726, 86 L.Ed. 971: "The Act provides the test of 'bona fide operation.' That standard carries the connotation of substantiality. It also makes clear that a holding out to serve a specified area is not alone sufficient. It is 'actual rather than potential or simulated service' which is required. McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 178, 83 L.Ed. 164. Substantial, as distinguished from incidental, sporadic, or infrequent, service is required."

In Peninsula Corporation v. United States, D.C., 60 F.Supp. 174, at page 180, the court said: "The 'grandfather' clause, so-called, requires that the Commission in specifying in a certificate the service to be rendered shall endeavor to preserve 'substantial parity between future operations and prior bona fide operations.' Alton R. Co. et al. v. United States et al., 315 U.S. 15, 22, 62 S.Ct. 432, 437, 86 L.Ed. 586; United States et al. v. Carolina Freight Carriers Corporation, 315 U.S. 475, 481, 62 S.Ct. 722, 86 L.Ed. 971; Crescent Express Lines v. United States et al., 320 U.S. 401, 409, 64 S.Ct. 167, 88 L.Ed. 127."

In Howard Hall Co. v. United States, 315 U.S. 495, at page 498, 62 S.Ct. 732, 734, 86 L.Ed. 986, the court stated: "Prior operations to several points in a region may or may not justify the Commission in authorizing service throughout the whole region. The precise geographical pattern for future operations is the product of an expert judgment based on the substantiality of the evidence as to prior operations, the characteristics of the particular type of carrier, the capacity or ability of the applicant to render the service, and the like. Alton R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586; United States v. Carolina Freight Carriers Corp., supra."

■ The plaintiff in its original application for a certificate under the "grandfa-ther" clause, filed with the Commission on December 31, 1935 (Docket MC-1091), sets forth that among the routes and territory which it regularly served on June 1, 1935, were operations between Rosslyn, Va., Washington, D.C., and Boston, Pittsfield, Mass., Utica and Schenectady, N.Y. Examination of Appendix A, offered by plaintiff, showed that from the period commencing January 9, 1934 to September 16, 1935, inclusive, it carried a total of 32 shipments from its base or terminal area, or from Philadelphia, to points in Connecticut and Massachusetts. No disclosure is made as to the weight of the shipments so as to reflect this factor in the substantiality thereof and there is no indication as to whether plaintiff interchanged any of the freight. It also fails to list a single through shipment arising either in New England territory or in Baltimore and Washington that it carried between any of these points.

Plaintiff offered in evidence as an exhibit a tariff which it filed with the Commission effective on April 1, 1936, pursuant to the Motor Carrier Act of 1935 §§ 201, 217, 49 Stat. 543, 560, 49 U.S.C.A. §§ 301, 317. It contended before the Commission that this exhibit "was not offered for the purpose of proving the actual transportation of any given commodity, between any given points; it was offered for the purpose of showing the bona fide holding-out of applicant to the general public and the extent of that bona fide holding out".

The tariff cover is entitled "Class and Commodity Rates and Rules and Regulations Governing Same Between Baltimore, Md., Washington, D.C., Rosslyn, Va., and Boston, Mass., Albany, N.Y., and Intermediate Points in Connecticut, Delaware, Maryland, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, Virginia and District of Columbia." The majority of the rates listed are for the transportation of class or commodity freight moving in a northerly direction from points in the Camden-Philadelphia area, Trenton area, metropolitan New York area and North Jersey points to points in the states of Connecticut, Rhode Island, and Massachusetts or from the same points in a southerly direction to points in the states of Pennsylvania, Delaware, Maryland, Virginia and the District of Columbia. The tariff fails to fortify plaintiff's contention of a bona fide holding out as it does not list any rate for carrying either class or commodity freight in either direction be-

tween any point in the northerly area of radial territory and any point in the southerly area of radial territory through any point in "base territory."

As of June 1, 1935, the plaintiff's main office and terminal were at South River, New Jersey. It maintained no terminal space nor did it have a telephone listed at Baltimore, Md., nor Washington, D.C., nor at any point in New England.

The fact is that plaintiff has not shown this court that the Commission has ignored any material evidence or that it has acted arbitrarily or capriciously in its consideration of the evidence presented on this issue. The record and evidence submitted by the plaintiff to the Commission to establish its "grandfather" right to the route in question disclosed that no operation ever existed in either direction between any point in New England territory through any base point to Baltimore, Md., and Washington, D.C., during the critical period.

However, in paragraph VIII of its complaint and in its argument before the court, the plaintiff contended that it was entitled to perform the through cross-haul operations regardless of whether they were performed on the critical date because the Commission had allegedly committed legal errors, briefly stated as follows, in that it (1) failed to give plaintiff the benefit of its pronouncements in the case of Powell Bros. Truck Lines, Inc.,—Purchase—Bryan, 39 M.C.C. 11, but instead had followed its pronouncements in the case of G. & M. Motor Transfer Co., Inc., Common Carrier Application, 43 M.C.C. 497; (2) in deciding the G. & M. case, acted inconsistently, and inferentially rejected its pronouncements in the Powell case; (3) misapplied the G. & M. case because it interpreted a certificate of an irregular route carrier where the facts differed materially from those in the instant case; (4) had created a discriminatory distinction in favor of regular route carriers as against irregular-route radial-carriers; (5) deliberately withheld its ruling on plaintiff's petition for reconsideration until its disposition of the G. & M. case; and (6) acted unreasonably, arbitrarily and capriciously in the foregoing matters.

Let us examine the cases drawn into question by the plaintiff. In the Powell case, Bryan, the owner of a certificate authorizing operation in interstate commerce as a regular-route carrier, proposed to transfer his certificate to Powell Brothers Truck Lines, Inc. Bryan's certificate was for two separate operations, which, combined, embraced the entire length of U.S. Highway 40, east and west across Missouri with a short appendage running south from U.S. Highway 40. Bunceton was at the lower terminus of the appendage. Kansas City, Missouri, and Kansas City, Kansas, were the extreme western termini and St. Louis, Missouri, East St. Louis, Illinois, and the National Stock Yard, Illinois, were the eastern termini of U.S. Highway, Route 40. Bryan transported shipments from Bunceton to Kansas City, Missouri, and Kansas City, Kansas, and returned to Bunceton as one separate operation. He transported shipments from Bunceton to the easterly termini and back to Bunceton as his other operation. He never transported through shipments between the respective termini on Route 40.

Several protestants intervened in that application and charged that the rights granted to Bryan originally were more extensive than should have been certified and that he had failed to exercise the use of the route in question and therefore had lost it by abandonment. The Commission, however, by an order, approved the transfer of Bryan's full operating rights, 38 M.C.C. 104.

Thereafter the same protestants instituted an action to enjoin the enforcement of the transfer of the operating rights of Bryan to Powell, as ordered by the Commission, alleging grounds similar to those urged before the Commission. The court reserved its judgment and requested the Commission to submit a supplemental report and order of clarification in Byers Transp. Co. v. United States, D.C., 48 F. Supp. 550.

In compliance with this order the Commission filed its Report on Reconsideration (39 M.C.C. 11) and construed Bryan's "grandfather" certificate in significant language as follows: "In the operating authorities of regular-route carriers, the services which such carriers may perform are described in part by a listing of the several routes over which they may transport shipments. A certificate authorizing operations over two or more routes that have one or more points in common which the carrier is authorized to serve confers the right to operate over all combinations of such routes and between the designated points thereon, unless the service is specifically re-

stricted in such certificate. * * *" at pp. 14, 15.

The Commission made further findings with respect to the issues of non-user and abandonment, pursuant to the request of the court, in which it negated their effect upon the right of Powell to a through route and affirmed the purchase approval it had made in its prior report.

The District Court, upon the filing of the Commission's Report on Reconsideration, resumed its consideration of the matter. In Byers Transp. Co. v. United States, D. C., 49 F.Supp. 828, the court accepted the construction of the Commission, and found that the proof was clear that Bryan operated over the entire length of U.S. Highway 40 between St. Louis, Illinois, and Kansas City, Kansas, although he conducted his operations over routes having a common point in the Highway. It sustained the Commission's findings as to non-user and abandonment and dismissed the complaint.

In the G. & M. case the carrier applied to the Commission to clarify its certificate for review and modification to authorize cross-haul transportation between northern and southern portions of authorized territory without interchange. Its certificate authorized operations over irregular routes, between Elkin and Statesville, North Carolina, and points in Delaware, Georgia, Maryland, New Jersey, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia and the District of Columbia, and those in designated points in Tennessee and New York.

It contended that its certificate should be interpreted to mean that it had authority to operate, for instance, from a point in New York to a Georgia point by way of Statesville, based on the theory that since it had authority to operate from a point in New York in in-bound service to Statesville and in out-bound service from Statesville to a point in Georgia, it should have the right to interchange with itself, and so provide through service over the two separately stated routes.

The Commission found this position untenable. It held that the applicant, as an irregular-route radial common carrier, was not authorized to transport shipments between points in its separate radial territories through points in its "base territory". It further held that the applicant's suggested interpretation of its certificate would require it to create a new operating right on the basis of the fiction that it may "interchange" with itself, a fiction to which the Commission declined to subscribe. It denied the petition, 43 M.C.C. 497.

The ruling of the Commission was tested by its suit to restrain the G. & M. Transfer Company, Inc., from operating beyond the provisions of its certificate as interpreted by it, which was instituted in the United States District Court, Western District of North Carolina, Statesville Division. On April 30, 1945, that court held, in Interstate Commerce Comn. v. G. & M. Motor Transfer Co., 64 F.Supp. 302, that it was bound by the construction placed upon the certificate by the Commission and that the certificate and the construction thereof could not be attacked collaterally as was undertaken by the Company in its defense.

The plaintiff's hypotheses that the Commission rejected its pronouncements in the Powell case, and instead, applied its pronouncements in the G. & M. case, and that it withheld its decision on plaintiff's petition for reconsideration until it had decided the G. & M. case, are in the realm of conjecture. The Commission makes no reference to these two cases in its report dated November 26, 1943, and in denying the application for a rehearing where these issues were first raised it made no findings. The authorities hold that the Commission is not required to make findings on such an application. Watson Bros. Transp. Co. v. United States, D.C., 59 F.Supp. 762, 777; Carolina Scenic Coach Lines v. United States, D.C., 59 F.Supp. 336, 337.

In reply to plaintiff's charge that inconsistent pronouncements had been made in the Powell case and G. & M. case, the Commission asserted that consistency in its decisions was not a legal requirement in its adjudication of the cases before it. Moreover, neither the reason nor the wisdom of its decisions are susceptible of question by the courts. The scope of their inquiry is confined to the determination of whether or not there is evidence to support the judgments of the Commission. In any event, the Commission took the further position that its decisions in question were quite consistent and that there was substantial evidence to support its findings.

The duty of administrative boards to be consistent was considered by the court in National Labor Relations Board v. Mall Tool Co., 7 Cir., 119 F.2d 700, at page 702, which said: "Consistency in adminis-

trative rulings is essential, for to adopt different standards for similar situations is to act arbitrarily. Under such circumstances, affirmative orders violate administrative discretion and become punitive, rather than remedial measures, outside the scope of the Board's powers. Republic Steel Corp. v. N.L.R.B., 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6; Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Pensteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599."

However, we are not required to pass upon the abstract theory propounded by the Commission that it has a right to indulge in inconsistencies of judgment, for we do not find any inconsistency upon its part in the decisions to which the plaintiff has pointed.

Plaintiff urged the contention that the G. & M. case cannot be differentiated from the Powell case except on the ground that the latter involved regular-route operation and the former irregular-route radial operation. It submits that the Commission held that regular-route highway sections may be combined to form through service, unless a specific limitation is written into the certificate while irregular highway sections may not be combined to form through service unless specific authority has been provided in the certificate whether or not the same highways, pick-up and destination points are employed. The plaintiff thereby claimed the right to draw the inference that certificates of regular-route operators will be interpreted liberally by the Commission, but that certificates of irregular-route radial operators will be construed narrowly.

From this assumption plaintiff proceeded to the conclusion that the Commission has applied a discriminatory practice, unwarranted in the law, against the plaintiff as an irregular-route radial carrier.

But the Commission actually differentiated the G. & M. case from the Powell case on altogether other ground when it said: "Neither are we impressed with applicant's reference to cases dealing with operating rights flowing from unifications of two or more motor common carriers under sections 5 and 212(b) of the act, as supporting its position. These unifications are not analogous to the situation here. In such cases the test is whether the unification is consistent with the public interest, and the through service generally authorized is one

that the carriers involved lawfully may have performed by interchange of traffic at common points of service prior to the unification. In other words, no new operating right is created, but merely a unification of the existing rights of two or more carriers. To agree with applicant's interpretation of its certificate would require us to create a new operating right on the basis of the fiction that it may 'interchange' with itself." G. & M. case, supra, at p. 501.

The Commission defined the distinction between radial and nonradial service in the following terms:

"(C) Irregular-route radial service.—An irregular-route radial-service carrier is any person who or which undertakes to transport property or any class or classes of property in interstate or foreign commerce by motor vehicle for compensation over irregular routes from a fixed base point or points to points or places located within such radial area as shall have been fixed and authorized by the Interstate Commerce Commission in a certificate of public convenience and necessity, or permit, or from any point located within such radial area to such carrier's fixed base point or points.

"(D) Irregular-route nonradial service.—An irregular-route nonradial service is any person who or which undertakes to transport property or any class or classes of property in interstate or foreign commerce by motor vehicle for compensation over irregular routes between points or communities located within such general territory as shall have been defined geographically, or permit, and any other points or communities located within the same general territory without respect to a hub community or a fixed base point of operation." G. & M. case, supra, pp. 501, 502.

The right of the Commission to make such classification has not been successfully questioned. It held that to adopt the interpretation urged by applicant and permit radial operators to perform cross-hauls between points in authorized radial territories through a base point or points would so change the scope of such carrier's operation as to virtually eliminate the distinction between radial and nonradial carriers; that it would be contrary to the informal interpretation given to certificates of irregular-route radial carriers by its Bureau of Motor Carriers under which interpretation the industry had flourished; that neither the public interest nor the national transportation policy had been shown to require

any relaxation in the principles announced with respect to irregular-route radial authorization and that they should not be relaxed on general principles as suggested by the applicant.

Plaintiff's case is similar to the G. & M. case and we believe that the Commission has not discriminated against plaintiff by reason of its status as an irregular-route common carrier.

■ The function of the Commission in the proceeding before it was to determine the scope of the authority to be granted to plaintiff in the way of "grandfather" rights upon the basis of its application and the proofs. The fact that it may be more economical to the public to allow the plaintiff to conduct through operations from points in New England territory to Baltimore and Washington or in the opposite direction does not constitute a valid criterion in the Commission's considerations in establishing plaintiff's "grandfather" rights.

A similar argument was raised in Loving v. United States, D.C., 32 F.Supp. 464, affirmed 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387. The court in that case said: "The purpose of the Act is regulatory, and we believe that the 'grandfather clause' was included therein for the benefit of carriers who had been in bona fide operation on and prior to the 'grandfather' date, rather than for the serving of public convenience. Adequate provision was contained in the Act for the granting of certificates upon proper showing that there is public necessity for such service, or that a public convenience will be served." at page 467 of 32 F.Supp.

■ As pointed out in the Loving case, the plaintiff may, of course, apply to the Commission for the broader authority desired; such application will not be granted automatically as under the "grandfather" clause, but will have to meet the requirements of 207(a), 49 U.S.C.A. § 307(a). Upon such an application proof as to economic value to the public might be highly instructive upon the issue of actual public convenience and necessity,[2] but plaintiff cannot intrude that issue into this proceeding which concerns itself only with the legality of the Commission's adjudication of plaintiff's "grandfather" rights.

■ The effect of plaintiff's petition for reconsideration was that plaintiff sought not so much an interpretation of the Commission's findings but rather an extension of authority to operate in a manner not contemplated by the Commission in the certificate. Our view is that the certificate granted to plaintiff is clear and unambiguous and states with definiteness the scope in which plaintiff is to be permitted to operate based upon the Commission's findings as to the extent of the bona fide operations of the plaintiff on June 1, 1935 and continuously since that date.

Plaintiff's complaint must, therefore, be dismissed.

## Findings of Fact and Conclusions of Law

### Findings of Fact

We find as facts that:

1. Plaintiff, a New Jersey corporation, is a common carrier for hire by motor vehicle in inter-state commerce.

2. On December 31, 1935, plaintiff filed an application with the Interstate Commerce Commission, pursuant to the provisions of 49 U.S.C.A. § 306(a), to establish its "grandfather" rights.

3. After several hearings, a report and findings were made on November 26, 1943 by Division 5 of the Interstate Commerce Commission and an order was entered thereon authorizing operations as a common carrier of general commodities with certain exceptions, over irregular routes between the points, or to or from the points named and described in Appendix B attached to said report and findings.

4. On January 12, 1944 plaintiff filed with the Interstate Commerce Commission a Petition for Reconsideration of its order of November 26, 1943, wherein it averred that it did not question the findings of the Division

"other than that which apparently restricts through transportation service between points in 'trunk-line' territory, on the one hand, and points in 'New England' territory, on the other hand, which moves through the 'base' territory. It accepts the Division's holding that it can no longer continue to render services between points situate in 'trunk-line' territory, south of the 'base' territory, which are not authorized in the Division's decision. Similarly, it does not question the Division's findings that it can no longer continue to render intraterritorial service between points in New

---

[2] See Noble v. United States, 319 U.S. 88, 92, 63 S.Ct. 950, 87 L.Ed. 1277; Goncz v. Interstate Commerce Commission, D.C., 48 F.Supp. 286, 289.

England, except to the extent authorized in the Division's decision.

"Should the Commission conclude that the interpretation of certificates, which it announced in the Powell Bros. Truck Lines, Inc., case, supra, applies to irregular route carriers, the same as to regular route carriers, and that applicant, under the certificate authorized to be issued by Division 5, as a matter of fact, will be entitled to perform the through transportation service herein described, then it is respectfully requested that there be issued a supplemental report making it clear that applicant is entitled to perform such transportation service."

5. On October 9, 1944 the Interstate Commerce Commission denied plaintiff's petition for reconsideration without stating its reason for such action.

6. The plaintiff in this suit seeks to have the court set aside the order of the Interstate Commerce Commission of November 26, 1943 and remand the application of plaintiff to the Interstate Commerce Commission for a modified certificate.

7. In this suit plaintiff reiterated its position with respect to the territorial limitations set forth in the order of the Interstate Commerce Commission of November 26, 1943, and raised substantially the same issues as are noted in preceding Finding of Fact No. 4.

8. The record submitted to the court does not disclose that plaintiff, on June 1, 1935, and continuously since that time, transported as part of its substantial and bona fide operations, general commodities between points in "New England" territory, on the one hand, and, on the other, points situate in the states of New Jersey, Pennsylvania, Delaware and Maryland through plaintiff's "base territory".

Conclusions of Law

We find as Conclusions of Law that:

1. This court has jurisdiction of the action herein and the parties.

2. The Interstate Commerce Commission gave plaintiff full and fair hearings in which it ignored no material evidence offered by plaintiff and it did not act in an arbitrary and unreasonable manner with respect to the proofs submitted to it.

3. The Interstate Commerce Commission did not err in failing to apply its decision in the case of Powell Bros. Truck Lines, Inc.—Purchase—Bryan, 39 M.C.C. 11, to the application of the plaintiff.

4. The order of the Interstate Commerce Commission of November 26, 1943 is supported by substantial evidence.

5. There is no evidence to support the charge that the Interstate Commerce Commission discriminated against plaintiff to its disadvantage because it is classified as an irregular-route radial common carrier, or otherwise acted toward plaintiff in an arbitrary, capricious or unreasonable manner.

6. Plaintiff's complaint should be dismissed.