**AERO MAYFLOWER TRANSIT CO., Inc. et al. v. UNITED STATES et al.**

Civ. A. No. 66–50.

United States District Court
D. Nebraska, Omaha Division.

Jan. 29, 1951.

Rosewater, Mecham, Stoehr, Moore & Mecham, Omaha, Neb., and (Lawrence W. Moore, Omaha, Neb.,) for plaintiffs.

Lambert S. O'Malley, Special Asst. to Atty. Gen., for United States.

Samuel R. Howell, Washington, D. C., for Interstate Commerce Commission.

260

Zelby & Burstein, and Herbert Burstein, New York City, and White & Lipp, Omaha, Neb., for Intervener.

Before JOHNSEN, Circuit Judge, DONOHOE, Chief Judge and DELEHANT, District Judge.

DONOHOE, Chief Judge.

This is an action to set aside an order of the Interstate Commerce Commission, entered January 20, 1950, and affirmed May 18, 1950, in the proceeding entitled Security Storage and Van Company, Inc., Extension —Arizona and California No. MC 8768 (Sub. No. 5). That this court has jurisdiction of the matter is clear. Title 28 U.S.C.A. §§ 1336, 1398, 2284, 2321–2325.

The events leading up to the issuance of the order which is now under attack may be summarized in the following manner. On June 26, 1946, Security Storage and Van Company, Inc.,[1] filed with the Interstate Commerce Commission an application for a certificate of convenience and necessity.[2] The application, as amended, sought a certificate authorizing operations by Security as a common carrier of household goods between points in Florida, Louisiana, Mississippi, Alabama, Texas, Oklahoma, Kansas and Tennessee, on the one hand, and, on the other, points in Arizona, New Mexico, California, Oregon, Washington, Wyoming and Colorado. After proper notice and pursuant to orders of the Commission, formal hearings in regard to the application were held before Commission Examiners. Protestants, the present plaintiffs in this action, were allowed to intervene in opposition to the application and given a full opportunity to participate in the hearings. It is not necessary at this point to analyze in detail the evidence introduced at the hearings. Suffice it to say, that the record reflects that in general the hearings, in se, were sufficiently full[3] and apparently fair.[4] Briefs were filed both in support of and in opposition to the application and thereafter on October 7, 1947, F. Roy Linn, the trial examiner, made a recommended report and order which, after certain introductory paragraphs explaining the nature of the proceedings, contains the following statement:

"Findings

"Upon consideration of all evidence of record, the examiner finds that the present and future public convenience and necessity require operation by applicant as a common carrier by motor vehicle, in interstate or foreign commerce, of household goods, as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467; between points in Florida, Georgia, Alabama, Mississippi, Louisiana, and Texas, on the one hand, and, on the other, points in Arizona and California, over irregular routes, traversing New Mexico for operating convenience only, subject to the restriction, the operating rights described herein shall not be tacked or combined with other operating rights held by applicant for the purpose of engaging in the transportation of shipments moving to or from points in States other than those specified herein.

"The examiner further finds that applicant is fit, willing, and able properly to perform such service and to conform to the requirements of the Interstate Commerce Act and the Commission's rules and regulations thereunder; and that an appropriate certificate should be issued."

The foregoing is in substance the entire recommended report and order. On October 27, 1947, the protestants (the present

1. Hereinafter referred to as Security.

2. The application and amendment were filed pursuant to the provisions of Sections 206(b) and 207(a) of Part II of the Interstate Commerce Act. 49 U.S. C.A., §§ 306(b) and 307(a).

3. Hearings were held before Examiner Reece in New Orleans, Louisiana, November 12 and 13, 1946; and before Examiner Linn in San Francisco, California, April 14 and 15, 1947. The record of testimony taken at these two hearings consists of 762 pages of transcript and 88 exhibits.

4. The interveners called 16 of the 34 witnesses testifying. The testimony of the interveners' witnesses amounts to about 397 of the 762 pages of the transcript. The interveners introduced over half of the documentary evidence.

plaintiffs) filed a petition for reopening the hearings for the purpose of introducing additional proof on the issue of the public necessity for the applicant's proposed service. This petition was denied January 19, 1948, by order of Division 5. The protestants filed a petition for reconsideration of this order and this petition was also denied. On April 27, 1948, the protestants filed a petition to strike the examiner's recommended report and order of October 7, 1947, and to require the entry of a proper and lawful recommended report and order, and to extend the time for filing exceptions thereto. This petition was founded upon the proposition that the report failed to contain a statement of facts, and contained no findings, or reasons for the ultimate recommendations, and was contrary to the Commission's Rules of Practice, and the requirements of the Interstate Commerce Act and the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. This petition was denied by the Commission by order entered June 16, 1948, and protestant's petition for reconsideration of that order was denied by an order entered October 4, 1948.

The applicant filed exceptions to the examiner's recommended report January 26, 1948, and the protestants filed exceptions November 3, 1948. Protestants' request for oral argument in regard to the exceptions was denied by the Commission. Thereafter, on January 20, 1950, Division 5 of the Commission issued the report and order which is herein assailed. The report points out that the conclusions of Division 5 differ somewhat from those recommended by the trial examiner Linn and contains an extended discussion of the factors which are the basis for the order, including findings of facts, conclusions of law and the reasons for both. On the last page of the fifteen page report the Commission states: "We find that the present and future public convenience and necessity require operation by applicant as a common carrier by motor vehicle, in interstate or foreign commerce, of household goods, as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467, between points in Florida, Georgia, Alabama, Mississippi, Texas, Oklahoma, Louisiana, and Tennessee, on the one hand, and, on the other, points in Arizona, California, Oregon, and Washington, over irregular routes, subject to the conditions that service shall be restricted to shipments moving between points in the States specified and that the rights granted herein shall not be combined with rights now held by applicant for the purpose of engaging in the transportation of shipments moving to or from States other than those specified herein."

Plaintiffs herein filed a petition for reconsideration which was denied May 18, 1950. Thereafter the plantiffs filed this action to have the order of January 20, 1950, set aside on the ground that it is void in three respects.

*First.* The plaintiffs contend that the order is void as being beyond the scope of the issues of the amended application because the order authorizes service in Georgia, a State not expressly mentioned in the application. It is not necessary to determine in this particular case whether the Commission's jurisdiction to grant new rights is limited by the scope of the application.[5] Security, by reason of a certificate issued in 1944, was authorized to conduct operations between points in Florida, Alabama, Mississippi and Texas on the one hand, and, on the other, points in various Eastern and Southern States, including Georgia.[6] If the Commission's order of January 20, 1950, had authorized operations only in the States mentioned in Security's

---

5. Title 49 U.S.C.A. § 307(a) provides that a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application. The petitioners claim that this limits the Commission's authority to authorize service to States requested in the application. It would seem, however, that the Commission could require the applicant to serve a State not requested in the application as a reasonable condition to the exercise of the privileges granted in the certificate. See 49 U.S.C.A. § 308(a). How far beyond the application the Commission can go is not clear. See Civil Aeronautics Board v. State Airlines, Inc., 338 U.S. 572, 70 S.Ct. 379.

6. No. MC–8768 (Sub No. 5)—Sheet 16, Appendix.

application, without any reference whatsoever to the State of Georgia, Security would have been able to conduct a transcontinental service by tacking the rights granted in 1944 to those granted in 1950. It is well settled that separate grants which have a point in common, can, in the absence of any restriction to the contrary, be tacked to provide a continuous through service. Century Matthews Motor Freight, Inc., v. Thrun, 8 Cir., 173 F.2d 454; Byers Transportation Co. v. United States, D.C., 48 F.Supp. 550, Id., D.C., 49 F.Supp. 828. The Commission, however, inserted the following provision in its report: "* * * The tacking of the new rights and the prior rights is warranted as to points in Georgia but not as to the eastern States, and Georgia accordingly is specified in the findings as a State to be served." No. MC 8768 (Sub. No. 5) Sheet 15.

■ This provision, considered in the circumstances of the case, is not tantamount to the granting of new rights in the State of Georgia. It is merely a reasonable condition attached to the exercise of the privileges granted by the certificate—the condition being that Security may tack its prior rights as to the State of Georgia to the rights presently granted but may not tack its prior rights as to Eastern States other than Georgia. That the Commission has authority to impose such reasonable restrictions is clear from Section 208(a) of Part II of the Interstate Commerce Act.

■ *Second.* The plaintiffs also contend that the order is void as being without support in or sustained by the evidence. In this regard, it is clear that the authorization of the westbound service, except insofar as it includes Georgia, is not, nor could it be, seriously questioned. There is ample evidence showing that the public convenience and necessity requires the westbound service from all the States for which authority is granted except Georgia. As to the State of Georgia, it has already been pointed out that Security is authorized to serve this State because "the tacking of the prior rights and the new rights is warranted as to Georgia." Consequently no finding of public convenience and necessity is required as to this state; nor is evidence on this point material.

■ The Commission authorized the eastbound service to "assist in the maintenance of the needed service westbound." The lack of primary evidence as to the need for such service is not in any way fatal because, in the absence of factors compelling it to exclude return loads for reasons of public convenience and necessity, the Commission could normally regard such return hauls as a necessary incident in setting up and insuring the soundness, stability, efficiency and economy of such a transportation system as public convenience and necessity had been shown to require.[7] This is especially true in a case such as this where long haul operations are involved. The Commission has often held that public convenience and necessity may be found in operating economies, Dixie Ohio Exp.—Extension of Operations, 30 M.C.C. 291; Schultz Common Carrier Application, 34 M.C.C. 629, and it is clear that such economies make available to the public cheaper and more reliable and expeditious transportation. Considering all the evidence with due regard to the public interest, the Commission could properly include the eastbound operations in the certificate granted on the basis of the public convenience and necessity which it found existed in the situation.

*Third.* The final contention of the plaintiffs is that the order is void as being based on and enforcing proceedings which were contrary to law and which deprived the

---

7. As an indication of the effect that the revenue from the return load has on the economy and stability of a transportation system the court calls attention to the statement of Judge Parker in Carolina Freight Carriers v. United States, D.C., 38 F.Supp. 549, 552, affirmed 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971: "Plaintiff says that the effect of thus limiting the order will be to put it out of business; and it is manifest that this must be true since it is hardly conceivable that a trucking company could do business if allowed to carry loads in only one direction, and the limitations imposed by the order will render it practically impossible for the trucks of plaintiff to obtain freight when returning".

plaintiffs of a fair and proper hearing. More specifically, the plaintiffs contend that the recommended report and order of the trial examiner was contrary to the Administrative Procedure Act and the Commission's Rules of Practice.

Section 5 of the Administrative Procedure Act provides that certain procedural safeguards must be complied with in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing.[8] Without need to consider and without expressing any opinion as to whether or not this particular provision of the Administrative Procedure Act is applicable to the situation now under consideration,[9] the court is constrained to hold that the plaintiff's contention is without merit. For, even if it were to be assumed that the Administrative Procedure Act applies, the petitioners cannot demonstrate error insofar as the order now under attack is concerned. It is true that the report of the trial examiner did not contain the findings, conclusions and reasons therefor as required by the Administrative Procedure Act.[10] However, the Commission did not accept the recommended report of the trial examiner. Using the record compiled by the trial examiners,[11]

Division 5 proceeded to make its own findings and conclusions and these, together with the reasons therefor, were set forth in an elaborate sixteen page report which clearly reflects that the Commission completely ignored the trial examiner's abbreviated recommendations. Under these circumstances, the recommended report and order can hardly be said to be any part of the process leading to the issuance of the order now being assailed. The situation as treated by the Commission was, in effect, the same as if the matter had been referred to the examiner for the mere taking and return of testimony. Subsequently thereto the Commission rendered its decision upon the record and the petitioners were by the rules of the Commission [12] afforded ample opportunity to challenge the Commission's findings and conclusions. Consequently, the fact that the trial examiner's report did not conform to the requirements of the Administrative Procedure Act, if that Act was applicable, was immaterial and could not possibly have been prejudicial to the plaintiffs herein.[13] To hold otherwise would deprive the Commission of the opportunity to police its own procedure.

The contention that the recommended report and order of the trial examiner did

---

8. Title 5 U.S.C.A. § 1004.

9. It is not necessary in the present situation and this court does not attempt to answer the question as to whether a hearing is required within the meaning of Section 5 of the Administrative Procedure Act by Section 205, 206 or 207 of Part II of the Interstate Commerce Act.

10. Title 5 U.S.C.A. § 1007 provides " * * * All decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record; and (2) the appropriate rule, order, sanction, relief, or denial thereof."

11. Cf. National Labor Relations Board v. Stocker Mfg. Co., 3 Cir., 185 F.2d 451, 453, in which Judge Hastie in evaluating the holding of the Supreme Court in Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288, comments:

"The Morgan opinion says that the officer who actually decides the controversy may do so on the basis of evidence taken by an examiner and thereafter sifted and analyzed by some other subordinate. Due process in administrative proceedings of the type now under consideration does not require that the testimony be evaluated by an officer who heard and observed the witnesses." Such situations are not unusual. For example, Rule 85 of the Commission's Rules of Practice, provides: "If for any reason an order referring a matter to a particular officer is vacated and the matter referred to a different officer, *any testimony already taken in such proceeding shall be part of the record* along with any testimony which may thereafter be taken."

12. Rule 101 (d) of the General Rules of Practice before the Commission.

13. Title 5 U.S.C.A. § 1008 (e). In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error.

not conform to the Commission's own Rules of Practice may be disposed of on the reasoning mentioned in the preceding paragraph. It may be well to note, however, that this same objection was raised before the Commission by the plaintiffs (interveners below) in their petition to strike the recommended report and order of the trial examiner. The Commission, in denying the petition, evidently felt that its rules of practice had not been violated in any substantial way. The Commission would ordinarily be in a better position to interpret its own rules of practice than would this court and there is no apparent reason why the Commission's ruling in this regard should be ignored.

The order of temporary stay granted for purposes of preserving the status until decision by this court is hereby vacated and the order of the Commission is affirmed.