T. I. McCORMACK TRUCKING CO., Inc.,
Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission,
Defendants.

Civ. A. No. 681–62.

United States District Court
D. New Jersey.

Feb. 4, 1966.

As Amended Feb. 7, 1966.

Peter E. Reilly, Jersey City, N. J., Chester A. Zyblut, Washington, D. C., for plaintiff.

David M. Satz, U. S. Atty., Newark, N. J., Lee Loevinger, Asst. Atty. Gen., Washington, D. C., John D. Wigger, Atty., Dept. of Justice, Washington, D. C., for United States.

Robert W. Ginnane, Gen. Counsel, Interstate Commerce Comm., by Thomas H. Ploss, Interstate Commerce Comm., Washington, D. C., for Interstate Commerce Commission.

Before SMITH, Circuit Judge, and COOLAHAN and SHAW, District Judges.

COOLAHAN, District Judge:

## I.

Plaintiff, T. I. McCormack Trucking Co., Inc., (McCormack) brings this action to suspend, set aside and annul an Order of the defendant Interstate Commerce Commission, entered March 26, 1962 in Docket MC–C 2998, T. I. McCormack Trucking Co., Inc., Investigation and Revocation of Certificate, 89 M.C.C. 5. That order required plaintiff to cease and desist certain operations conducted under its certificate of public convenience and necessity known as the "Sub 70 Authority." The Commission charged these operations exceeded the territorial authority allowed by the certificate.

Under Section 1.101 of the Commission's Rules of Practice and Procedure, the order challenged has become final and plaintiff has exhausted its administrative remedies. Federal jurisdiction is invoked under the provisions of Title 49 U.S.C. § 305(g), § 305(h), Title 5 U.S.C. § 1009, and Title 28 U.S.C. §§ 1336, 1398, 2248 and 2321–2325 inclusive. This three Judge District Court has been duly constituted pursuant to Title 28 U.S.C. § 2284, and plaintiff has properly joined the United States as defendant as required by Title 28 U.S.C. § 2322.

## II.

The nub of this dispute is the interpretive question raised by the Commission's construction of the following portion of the Sub 70 Certificate, which permits transportation of certain commodities:

"Between points in Connecticut, Pennsylvania, New Jersey and New York *within 100 miles of Columbus Circle, New York, N. Y.,* on the one hand, and on the other, points and places in Connecticut, Delaware, Maryland, Massachusetts, Pennsylvania, New Jersey, New York and Rhode Island." (Emphasis added)

The specific question at issue is whether the underlined phrase "within 100 miles of Columbus Circle, etc.," modifies only the State of New York, as urged by

McCormack, or all of the States in the preceding series, as concluded by the Commission.

Plaintiff, a New York Corporation having its main office in New Jersey, has operated since 1949 as a common carrier by motor vehicle of liquid commodities in bulk pursuant to various certificates of the Commission, and today operates in approximately 26 states. The Sub 70 Certificate was issued in 1948 in Docket No. MC–52458 to the T. I. McCormack Trucking Co., Inc., and obtained along with the corporate stock by the present owner who has continuously operated the corporation ever since.

The authority granted in the certificate was not disputed until 1952. Then, in four proceedings during the next seven years [1] in which McCormack protested pending awards to its competitors, various Divisions of the Commission indicated that McCormack's base territory did not include any points in Pennsylvania, New Jersey, New York or Connecticut, which were situated in excess of 100 miles from Columbus Circle.

The Commission decision and Order which plaintiff now challenges resulted from three further proceedings that were consolidated and heard together on May 23, 1960, 89 M.C.C. 5. Two proceedings dealt with applications by McCormack itself for new certificates.[2] The third was an investigatory proceeding instituted by the Commission under Sections 204(a) and 212(a) of the Interstate Commerce Act, (the Act) after McCormack's "fitness" had been challenged in the application proceedings. It had been alleged that McCormack was engaging in for-

hire transportation in Interstate Commerce in violation of Sec. 206(a) of the Act.[3]

Following the consolidated hearing, the examiner held McCormack to be in violation of Sec. 206 supra, and recommended that it be ordered to cease using as base points any places in Pennsylvania, New Jersey, New York or Connecticut which were more than 100 miles from Columbus Circle. For reasons discussed below, the Commission agreed with his interpretation and entered such an order.

From that decision, plaintiff appeals, contending it is so unreasonable, arbitrary, and lacking support in the record evidence and applicable law that this Court should set it aside. Plaintiff further contends that the Commission's erroneous interpretation operates to rescind part of his certificated authority, thereby depriving him of a property right contrary to Section 212 of the Act, 49 U.S.C. § 312. Plaintiff asks us to reverse the decision below and to declare his operations to be within the territorial prescription of the Sub 70 Certificate. In the alternative, plaintiff asks us to remand this matter to the Commission for further consideration in accordance with our opinion.

### III.

The ultimate question before the Court is a simple one: Namely, to how many States does the restriction, "within 100 miles of Columbus Circle" refer? However, that question is complicated by a threshold dispute over the Commission's procedure. The Commission resorted to

---

1. P. B. Mutrie Motor Transportation, Extension-Chocolate 54 M.C.C. 838 (1952); P. B. Mutrie Transportation, Various Points, 66 M.C.C. 818 (1955); P. B. Mutrie Transportation, Bainbridge, N.Y. 69 M.C.C. 161 (1956); Control Tank Lines-Extension-Riverside, 81 M.C.C. 600 (1959).

2. No. MC–52458, Sub. 143, T. I. McCormack Trucking Co., Extension-Dry Sugar, and No. MC–52458, Sub. 150 T. I. McCormack Trucking Co., Extension-Liquid Cleaning Compounds. Plaintiff has since

been issued a certificate in the Sub. 143 proceedings; the Sub. 150 Application was denied and no appeal was taken from either action.

3. "Except as otherwise provided in Section 210a, no common carrier by motor vehicle subject to the provisions of this part \* \* \* shall engage in any interstate or foreign operation on any business highway \* \* \* unless there is in force \* \* \* a certificate of public convenience and necessity issued by the Commission authorizing such operations."

matters outside the four corners of the certificate to aid its interpretation. McCormack contends that this resort contravened the Commission's own well-established rule for construing permits and certificates.

■ The rule in question arose from the need to protect legitimate expectations based on Commission actions. In order to afford the certainty and continuity essential for both carriers and the shipping public in such an extensively regulated industry, reliance on the language of an operating certificate must not go unrequited. Accordingly, absent a patent ambiguity on the face of the document, the Commission will not permit reference to extraneous matters to show that the service apparently permitted by the terms of the certificate in fact exceeds the authority actually granted. Andrew G. Nelson, Inc. v. United States, et al, 355 U.S. 554, 558, 78 S.Ct. 496, 2 L. Ed.2d 484 (1958).

The Commission delineates the extent of this rule in its Report, 89 M.C.C. at 9.

"One cardinal rule is that the certificate must speak for itself. In the absence of patent ambiguity the Commission refuses to consider extraneous matters, including the record which gave birth to the certificate in question. (Citations omitted). And this rule is followed regardless of whether the practical result is to confer upon the carrier more or less authority than may have been intended to be granted originally. (Citations omitted) * * * Moreover, the Commission has consistently held that a validly issued certificate may authorize transportation * * * not contemplated at the time (it was granted) Jones, Interpretation of Certificate, 64 M.C.C. 527, and service within a larger territory than intended * * * Wright v. Central Freight, 66 M.C.C. 396. As pointed out by the Commission in Manhattan

Coach Lines, Inc. v. Adirondack Transit Lines, Inc., 42 M.C.C. 123, 126. *Any other rule would contribute an intolerable uncertainty to the finality of any right granted.*" (Emphasis added).

Our starting point, then, is the propriety of the Commission looking behind this certificate rather than relying solely on its language. The Commission's grounds for adopting the disputed procedure and not following the aforementioned rule were based on its decision that the certificate was ambiguous as set forth in its Report, 89 M.C.C. at pp. 8–16.

The Commission weighed three possible conclusions: (1) that the certificate is clear and unambiguous in applying the 100 mile limitation to New York State alone. (McCormack's position throughout this litigation); (2) that the certificate is clear and unambiguous in applying the 100 mile limitation to all the named states (the position of the Examiner); and (3) that the certificate is ambiguous since the limitation can reasonably be construed to apply either to New York State alone or to all the named States. 89 M.C.C. at 8.

The Commission rejected both position (1) and (2) and, choosing alternative (3), found the certificate sufficiently ambiguous to warrant consulting antecedent records.

McCormack had offered three reasons for finding the certificate unambiguous.

First, McCormack argued that the Commission should not contradict Commission statements by examiners in earlier litigation to the effect that the Sub 70 Certificate was free from any ambiguity.[4] The Commission dismissed this argument on the grounds that the scope of the Sub 70 Certificate was only a collateral issue in those cases and that since it was not fully litigated then, their holdings were not controlling.

Second, McCormack offered expert witnesses including a linguist and several lawyers with long experience before the Commission who argued in support

4. Op. Cit. supra, note 1.

of its interpretation. The Commission conceded the competency of their testimony and even spent some time defending it against criticism by the Board of Inquiry. But the Commission still found the certificate ambiguous.

McCormack's main argument was that proper application of the rules of grammar normally used by the Commission clearly compelled upholding McCormack's interpretation of the certificate and thereby precluded a finding of ambiguity.

McCormack relied primarily on a grammatical principle of statutory construction known as the "Doctrine of the Last Antecedent". As the Commission explained it at 89 M.C.C. 13:[5]

> "According to the doctrine of the last antecedent, relative words, phrases, and clauses[3] are applied to the words and phrases immediately preceding[4] and should not be construed as extending to more remote words or phrases[5] unless such extension is clearly required by the context of the language in question. 50 Am.Jur. Statutes, Sec. 269 (1944). Where a comma separates a modifying clause from the word or clause immediately preceding, the presence of the comma is an indication that the modifying clause was intended to modify all the preceding clauses and not merely the last antecedent clause. * * * No such comma separates "within 100 miles of Columbus Circle, N. Y." from the last antecedent, "New York" in McCormack's Sub 70 Certificate."

The Commission admitted the general applicability of the doctrine to language of the type before it. However, the Commission refrained from using the doctrine in this instance because it concluded from the case law that the doctrine should be employed only after language had already been found ambiguous on the basis of more direct evidence. "[T]he ambiguity of the language in question is at least impliedly recognized by resort to legislative history, the probable purpose of the legislature, considerations of public policy, or judicial notions of common sense." 89 M.C.C. at 15.

The Commission further noted that the doctrine seldom was decisive in construing a statute, and was rebuttable by a very slight indication of contrary intent. Ibid. Therefore, the Commission resorted to the prior record after finding the certificate ambiguous. The Commission admitted that the propriety of thus looking behind the certificate hinged on the soundness of its conclusions about the Doctrine of the Last Antecedent. It then reasoned that if the certificate was ambiguous enough to allow use of the doctrine of the last antecedent, it was also ambiguous enough to warrant resort to the document's "legislative history." Id. at 16.

On the basis of the record in the original certification proceeding, the Commission found that the plaintiff's predecessor-in-interest neither applied for, nor produced evidence for, nor expected, nor believed it received at that time the authority plaintiff now claims. Ibid.

However, the Commission added that "(I)f such an examination (of the certification proceeding) did not clearly reveal the actual intent of the Commission, we would be obliged to find the doctrine of the last antecedent controlling, *there being no other relevant guide to interpretation*." (Emphasis added) Ibid.

On the basis of its findings, the Commission concluded that the 100 mile limitation in the certificate does modify all the named States and that operations thereunder must be so limited.

## IV.

■■ The appropriate dimensions of this Court's scrutiny in reviewing Commission Orders is well established. The

---

**5.** The Commission's footnotes as numbered in the quoted passage are:

"(3) Within 100 miles of Columbus Circle, N. Y.

(4) New York

(5) Connecticut, Pennsylvania, New Jersey."

Court will not set aside or modify such orders if they are taken within the scope of the Commission's statutory authority, are not completely unreasonable, and are based on adequate findings supported by substantial evidence from the record. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821 (1946). Moreover, if there is warrant in the law and the facts for the agency's action, we must be careful not to set it aside "simply because we might have reached a different conclusion on the same record. We must give due credit to the expertness of the Commission in the field Congress has confided to it." National Bus Traffic Association v. United States, D.C., 143 F. Supp. 689, 695–696 (1956) (3 Judge Court, Third Cir., per Chief Judge Biggs), aff'd. 325 U.S. 1020, 77 S.Ct. 589, 1 L.Ed.2d 595.

The defendant seeks to extend this familiar restriction on our scope of review. They urge that particular solicitude should be given to the Commission's interpretation of its own certificates. Several cases are cited wherein courts explicitly refrained from voiding Commission orders for reasons of "semantic preference and composition," (Defendant's Brief p. 11 and cases cited therein). See infra, note 11. However, we think those holdings can be more fully understood as bearing on the substantive questions of interpretation to which we now turn.

McCormack's first two arguments to the Commission in regard to the Certificate's ambiguity may be dealt with briefly.

■ We accept the Commission's conclusion that earlier Commission reports stating the certificate was "unambiguous" are not controlling since they discussed the issue only collaterally. There is an even more conspicuous difficulty with the plaintiff's attempt to use those earlier cases. The examiners therein only found the certificate unambiguous *after* finding that it clearly meant the exact opposite of the interpretation plaintiff now advances. That is to say

the examiners had construed the Sub 70 authority to clearly restrict McCormack's operations in precisely the same measure as the Order plaintiff has challenged. Plaintiff, in effect, is asking the Commission to contradict the real thrust of these decisions in the guise of requesting they be followed on the question of ambiguity; the request was properly denied.

■ Second, in regard to the plaintiff's expert witnesses, the Commission was bound to consider such evidence where competent. But the Commission is also clearly free to "disbelieve or disregard any evidence as it seems unconvincing; it may give as much or as little weight to the evidence as it seems proper." (Citing Cases). Loving v. United States, 32 F.Supp. 464, 467 (W.D.Okla. 1940) aff'd. 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387. In this instance, the Commission far from disregarding the testimony, considered it meritorious, though not conclusive. Therefore, we must defer to the Commission's evaluation and use of that evidence unless we find the Commission's other bases for its conclusion insufficient.

We turn to McCormack's main contention, namely, that the Commission erred in finding sufficient ambiguity to consult the prior record. McCormack argues that the Commission: (1) misapplied the Doctrine of the Last Antecedent; and (2) ignored the more fundamental rules of grammar and punctuation applicable to such language.

The Government's reply is also twofold. First, they contend that the Doctrine was properly subordinated to the legislative history of the certification record. Second, it is argued that even if other rules of punctuation and grammar should have been given more weight, the courts consistently refuse to overturn a Commission's interpretation of its own certificate on such grounds.

■ Both parties continue to discuss the Doctrine and the rules of punctuation and grammar separately. This has produced considerable confusion as to whether we are dealing with only one

or with several different rules of construction. Fortunately, the confusion is unnecessary. At bottom, the Doctrine of the Last Antecedent and those "additional rules of punctuation and grammar" urged by McCormack are one and the same.[6] The fact that these grammatical aids have been gradually ensconced as a canon of statutory construction should not obscure the identity between the two forms. In either case we simply have the long standing rule that a modifying phrase refers only to the last antecedent phrase or word which it can reasonably modify. The rule of punctuation is merely a supplementary guide which tells us that if the modifier is intended to relate to *more* than the "last antecedent", a comma is used to set off the modifier from the entire series. Therefore, the following discussion applies equally to the Doctrine and to the rules of grammar and puncuation *per se*.

As noted previously, the Commission thought the applicability *vel non* of the Doctrine was decisive in this proceeding but concluded that it could only be used after the disputed language had already been deemed ambiguous and more direct tools had failed. See p. 8 *supra*. The Government argues McCormack is now hoist by its own petard; if there was sufficient ambiguity to apply the Doctrine, then there also was sufficient ambiguity to resort to the prior record without violating the Commission's procedural rules. The final thrust of this argument is that once that record was properly admitted, its indication of the intended scope of authority superceded any contrary result suggested by the Doctrine. "Such rules of grammar must yield to the intention of the Commission which was found in the record of the certification proceeding." Defendants' Joint Brief, p. 19.

 The Government repeatedly stresses this contrast between the in-

ferior position normally accorded rules of punctuation and grammar in statutory construction and the paramount role accorded the statute's legislative history. As a general rule, the whole context of a statute, including the legislative history itself should be examined to determine the drafter's intent. While the legislature is presumed familiar with the ordinary conventions of wording, punctuation and grammar, it is clear that many statutes are drafted with something short of perfection. The legislative history, on the other hand, offers direct compelling testimony of the intended meaning; where its use is appropriate, its guide is paramount. Further, since the ordinary principles of statutory construction apply to the interpretation of licensing certificates, the "legislative history" of a certificate controls in most instances. 89 M.C.C. at 10.

However, in the case *sub judice,* the authority offered by defendants for this proposition, misses the point by ignoring the very source of the controversy before us: the Commission's own rule strictly limiting use of "legislative history."

 Canons of statutory construction have sometimes been developed to promote objectives of our legal system which transcend the wishes of a particular legislature; similarly, rules adopted by the Commission for construing certificates are based on policies which may sometime transcend the intent of a particular certification proceeding. The Commission has said so itself in explaining the rule in question. See p. 530, *supra*. This cardinal policy of refusing to consult prior records cuts across the usual sequence of interpretive tools. That sequence is not sacrosanct; in the face of a concrete overriding policy, it should not be applied mechanically to constrain the interpreter.[7]

---

6. The Commission recognized this in its Report. "The rule of statutory construction known as the doctrine of the last antecedent is also a long established rule of grammar". 89 M.C.C. at 13.

7. The Commission's Report noted this. "Although the record in application proceedings may be presumed to contain the best evidence of the Commission's intent * * * the Commission has chosen to

In considering the ambiguity of the Sub 70 Authority on its face, the prior record was simply not available. And since no other guides were available, the usually subordinate rules of grammar were perfectly proper and pertinent aids in interpretation. In fact, the Commission recognized their pertinency in its rejection of the Bureau of Inquiry's claim that the certificate unambiguously contained a broader restriction. "Adoption of the Bureau's position would be tantamount to a finding that the Commission consistently flouts accepted rules of grammar in framing grants of operating authority. Any such finding would be contrary to fact." 89 M.C.C. at 11. Surely it is not contended that the ordinary rules of grammar and punctuation entailed in the Doctrine of the Last Antecedent are not logical tools to utilize in one's initial reading of disputed language.

Moreover, such indications of the normal reading to be given the certificate are precisely what a layman shipper would rely on in his operations. It must be remembered that the importance of vindicating such reliance is the basis of the rule requiring patent ambiguity before admitting prior proceedings.

The earlier opinions which the Commission relied upon, to the effect that the Doctrine of the Last Antecedent can only be used as a last resort on language already judged "ambiguous", must be read in light of the above analysis. Normally, there is no bar (as exists here) to immediately consulting the legislative history. Since the history would control in case of a conflict, these decisions held that the Doctrine need not be utilized until more important tools fail and the language remains ambiguous.[8] Where the legislative history is inconclusive or otherwise unavailable, however, the Doctrine may indeed be dispositive. Kales v. City of Oak Park, 315 Mich. 266, 23 N.W.2d 658. In effect, this was the situation facing the Commission when it examined the certificate on its face.

Under such circumstances, we are of the opinion that a proper understanding of the Doctrine of the Last Antecedent and the rules which it comprehends required their application in the initial determination of ambiguity.

The second half of the Government's reply is based on the judicial self-restraint traditionally exercised when the Commission's interpretation of a certificate is challenged on grounds of grammar or punctuation.

Defendants' brief cites many decisions in which the Courts refused to overturn the Commission on such grounds. They argue these cases not only show the slight weight to be given rules of composition, but also indicate that even if the Commission gave them inadequate weight in the instant matter, its conclusion should not be disturbed.

The short answer to this is that the cited decisions fall within a category from which the Commission itself has excluded the Sub 70 Authority investigation. With one exception, these cases

---

make the clear language of a certificate controlling * * *". 89 M.C.C. at 10.

8. 89 M.C.C. at 15, note 6; 82 C.J.S. Statutes § 334. The cited section of C.J.S. states the rule is only "to be applied only where there exist uncertainties and ambiguities." The only case noted by C.J.S. for this point is Kelly v. State, Personnel Board, 31 Cal.App.2d 443, 88 P.2d 264 which is also footnoted in the Commission Report. Kelly in turn quotes Sutherland's Statutory Construction, "This rule * * * is only applicable where there is nothing in the statute indicating that the relative word or qualifying provision is intended to have a different effect." Sutherland, 2nd Ed., 812.

Similarly, in United States v. Brandenburg, 3 Cir., 144 F.2d 656 (1944) the Third Circuit disregarded the interpretation of a statute suggested by the Doctrine of the Last Antecedent. Judge Biggs found the intent of Congress to be otherwise. "[A] clause modifies that antecedent which the draftsman intended it to modify." 144 F.2d at 661. But there was no procedural rule against using the legislative history in that instance. Further, the Court relied on its own expertise in legal language to find greater plausibility in the prevailing interpretation. See p. 535, infra.

dealt with descriptions of the commodities which could be shipped, rather than with the authorized territory of operations. The interpretation of such "commodity descriptions" is undeniably an area wherein the Commission's great familiarity with customary trade usage and with industry-wide understanding of prior Commission interpretations is critical. In the cited cases, this expertise provided an independent basis of interpretation apart from either the rules of grammar and punctuation, on the one hand, or from express statements of the draftsman's intent, on the other.[9]

The Commission's candid descriptions of the phrases here in dispute explain why the normal reasons for deferring to its expertise in trade parlance do not apply.

"We realize that *Dart* and Pierce v. Converse, supra, are not controlling precedents for the disposition of this proceeding since strict adherence to the rules of grammar in those proceedings would have been inconsistent with the Commission's settled practice of using other terms in granting general commodities authority. *As previously indicated, there is no Commission policy with respect to granting a larger or smaller origin territory under language similar to that used in McCormack's certificate.)* (Emphasis supplied)." 89 M.C.C. at 14.

Earlier, the Commission stated even more explicitly the ordinary nature of the disputed wording:

"In addition to these general rules of construction, the Commission is

9. Andrew G. Nelson v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1957). J. B. Acton, Inc. v. United States, 221 F.Supp. 174 (W.D.Mo.1963); Dart Transit Co. v. I.C.C., 110 F.Supp. 876 (D.Minn.1953); aff'd. per curiam, 345 U.S. 980, 73 S.Ct. 1138, 97 L.Ed. 1394; Converse v. United States, 109 F. Supp. 807 (N.D.Cal.1953).

In *Nelson*, the Commission interpreted a commodity description, "stock in trade of drugstores", to authorize only commodities actually intended to become part of the stock of a drug store. The shipper contended the phrase was generic and authorized shipment to any consignee whatsoever of items which drug stores might stock. The reviewing court upheld the Commission's interpretation of the phrase as an "intended user restriction". That common form of commodity description typically refers to a specific type of enterprise as well as to categories of commodities. The reference is deemed to limit transport to only those items within the listed categories which are either consigned to or are intended for eventual use by such an enterprise. Although the court found that none of the words were individually technical terms of art, it also found that "an examination of the Commission's decisions [indicated the] use of a definite and distinctive linguistic pattern whenever descriptions are made by reference to place of sale; * * *." 355 U.S. at 560, 78 S.Ct. at 499.

The *Dart* case dealt with similar "intended user" restrictions. The permit authorized shipment of, *inter alia*, "[p]ackinghouse and dairy products,

equipment, material and supplies." The Commission held that for a particular commodity to be a packing house or dairy material or supply it had to be earmarked at the time for use in a packing house or dairy. On review, the Court noted that "within reasonable limits it is for the Commission to determine the scope of [a shipper's authority]," but quickly added, "Words may have one meaning when used in industry or in the regulation of industry and another meaning when used in common speech." 110 F.Supp. at 880.

Defendants find Converse v. United States particularly relevant to the case before us. The certificate in *Converse* authorized carriage of "machinery and machinery parts, mining and construction materials, equipment and supplies." Despite the absence of a comma, the Commission held that commodities in all three categories had to be intended for use in mining; the court held that it was "not prepared to say that in the instant case, the absence of a comma should require this Court to substitute its judgment for that of the Commission's [sic] for we find that the decision * * * is neither clearly erroneous nor arbitrary." However, this expression of restraint must be read in conjunction with the immediate preceding explanation of the Court's deference. "The Commission is familiar with the ordinary usage and common understanding of the industry. The administrative agency's judgment in a field where it has expert knowledge and experience should be deferred to unless clearly erroneous or arbitrary." 109 F. Supp. 808.

guided in its interpretation * * * by the trade or other specialized usage of particular words and phrases or by certain basic language in the objectives of motor carrier regulation. The disputed language in McCormack's certificate is nontechnical in nature. *There is no apparent reason for example, why a similar territorial description in a statute or a contract should be given any different meaning,* * * * no policy or presumption favoring a liberal or strict construction for the purpose of granting a larger or smaller quantum of operating authority. (Emphasis supplied)." 89 M.C.C. at 10.

Admittedly, the dispute in Burlington-Chicago Cartage v. United States and I.C.C., 178 F.Supp. 857 (S.D.Ill.1959) also cited by the defendants, did not involve a commodities description; it too dealt with a territorial description. The Court felt that a decision to vacate the Commission's interpretation "must be based on something more than preference in grammar and composition." 178 F. Supp. at 857.

But the Court in *Burlington* was not faced with the question of a single sentence's punctuation. Rather, the Commission had based its interpretation on the ordering and relationship among several complex paragraphs describing technical exceptions to the primary restrictions on Burlington's authority. The Court found the decisions in *Dart,* and *Converse,* supra, controlling on the effect to be given the Commission's expertise in such matters.

In summary, all of these cases presented questions of construction peculiarly suited to the Commission's experience in drafting and interpreting the language of the industry. No such problem is involved herein; we must look elsewhere for some reasons supporting the Commission in its avoidance of the normal grammatical reading of the certificate.

## IV.

■ In support of its view on the doctrine of the Last Antecedent and on the overriding importance of legislative intent, the Commission advances several further contentions. In weighing these contentions, however, it must be remembered that a challenged Commission Order is under review. Therefore, we must look first to the explanations of that Order given in the Commission's own Report. The Government's attorneys, as much as any other litigant, are entitled to justify that decision on its appeal with whatever arguments they deem pertinent, but they will not be heard to contradict the Commission's own explanation of its action, nor to advance reasons which the Commission has expressly disavowed in its Report. Viewed in that light, several of the grounds now advanced to support the decision are untenable.

■ First, the Government argues "the fact that reasonable men differed herein on the meaning of the limitation in plaintiff's certificate indicates ambiguity sufficient to warrant consultation of the record in plaintiff's application proceedings." Defendants' Joint Brief, p. 24. The Government then attempts to distinguish several cases cited by McCormack for the converse proposition that such disagreement is *not* a sufficient indication of ambiguity. The Government's efforts are misplaced. For the Commission itself made clear that it did not consider such differences of opinion a basis for its finding that ambiguity existed in a legal sense. 89 M.C.C. at 11.

Second, the Government argues that although the Commission maintains it only will look behind certificates which are patently ambiguous, "its practice has been to make such reference in cases wherein the ambiguity was perhaps less than patent." Defendants' Joint Brief, p. 12. However, a moment's consideration of the policy underlying the Commission's rule indicates why those cases are inapposite.

In those instances,[10] the Commission had initially decided on the basis of the Certificate alone, that it was free from ambiguity and that it granted less authority than the carrier claimed. Then, being particularly solicitous of valid prescriptive rights, the Commission or the Courts still looked to the underlying grandfather operations to see if the entire record might offer the carrier more support. Thus, a rule designed to protect relying carriers was momentarily sidestepped in order to afford them even greater protection in cases where the carrier claimed more authority than the certificate, on its face, seemed to give.

In Andrew G. Nelson v. United States, the Supreme Court concurred in the Commission's refusal to look behind the certificate since it was not patently ambiguous. The Court then added by way of dictum that "Even if such reference is made * * *, however * * * [t]hat background in nowise supports appellant's (the carrier) position." 78 S.Ct. at 499.

It was in reference to this passage from Nelson that the trial court in Sims Motor Transport concluded "the Supreme Court does not appear to preclude the possibility of going behind a certificate, even though it is not considered patently ambiguous, which is exactly the case here." 183 F.Supp. at 117. In Sims, the Commission had found the phrase "iron and steel products" unambiguous, but it was similarly solicitous of the carrier's "grandfather operation" claims:

"Contrary to the claims of respondent (Sims) there is nothing patently ambiguous in the certificate which the appellant holds and for that reason there was no necessity to go back to it in order to determine what was

intended. Nevertheless, we have done so, and * * * have found nothing to suggest, even remotely any right to, or any intent to grant, any of the commodities (at issue)." 72 M.C.C. 355, 359 (1957).

Affirming, the lower court emphasized that "the Commission's decision * * * is reached independently by interpretation of the certificate face value, while the treatment accorded the underlying background more or less approximates the holding in the Nelson case." 183 F. Supp. at 118.[11]

█ These circumventions of the Commission's own rule were largely hypothetical and actually furthered the rule's policy of protecting the carrier. They cannot fairly be used now as an authority for ignoring the rule in the converse situation where it is the carrier who relies on the certificate, and the prior proceedings are invoked to deny the authority he claims.

The Government also cites Jones Truck Lines, Inc. v. United States 146 F.Supp. 697 (W.D.Ark.1956), which in fact was a case of partial ambiguity. The Court there sanctioned reference to award proceedings to interpret a territorial restriction after finding that "Grammatically the questioned language may not be ambiguous, but functionally it is." However, the Court had first found that the disputed language "has no definite meaning until it is compared with a map showing the location of these highways." 146 F.Supp. at 702. (The Certificate allowed shipments from points "on and East of" two highways which crossed in the form of an X.) It would not seem, nor has the Commission suggested, that the contested portion of the Sub 70 Certificate can be termed functionally ambiguous in this sense.

10. Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496; Sims Motor Transport Lines, Inc. v. United States, 183 F.Supp. 113 (N.D.Ill.1950), aff'd. 362 U.S. 637, 80 S.Ct. 1076, 4 L.Ed.2d 1019; Denver Chicago Transport Co. v. United States, 183 F.Supp. 785, aff'd. 364 U.S. 627, 81 S.Ct. 356, 5 L.Ed.2d 363.

11. It is also significant that the Sims case was cited in the Commission Report on McCormack for its decision that it could not look behind McCormack's certificate absent patent ambiguity, 89 M.C.C. at 9.

Third, the Government disputes the innocent purchaser status claimed by McCormack's present owner. That claim is not decisive for the issues before us, but it does bear on the weight to be given the Commission's rule limiting resort to prior proceedings.

The purpose of the rule is to facilitate reliance on the certificate. The need of a bona fide purchaser to rely solely on the certificate without having to peruse voluminous records is clearly greater than the comparable need of an original applicant, who was party to the award proceedings. See Jones & Jones, Interpretation of Certificate, 64 M.C.C. 527, 529. Of course, such a purchaser does not merit special consideration if the certificate language presents such a glaring error or inconsistency that he should be put on guard. But whatever its ultimate interpretation, the Sub 70 Certificate is hardly of such a nature.

In opposition to this argument that the Order unfairly penalizes an innocent purchaser, the Government charges bad faith on the part of McCormack's present owner. It claims that his failure to seek a more favorable determination of his authority despite the narrow construction given his certificate in the aforementioned four earlier proceedings constitutes laches and, if anything, makes him less entitled to the protective procedure in question.

The best answer to this charge of bad faith was given by the Commission in its Report. Because the interpretations given in those earlier proceedings were extremely conclusory, the Commission found that McCormack should *not* be "characterized as perfidious for refusing to accept what amounts to a humpty-dumpty interpretation of its certificate." 89 M.C.C. at 12.

It is not incumbent upon a carrier to fully relitigate every suggested derogation of its authority in collateral proceedings not directly challenging its operations. In cases of chronic controversy the time and expense involved would be too burdensome. As the Commission put it, "It is the responsibility of the Bureau of Inquiry and Compliance to enforce the decisions of the Commission." 89 M.C.C. at 12. And see Parkhill Truck Co. v. United States, 198 F.Supp. 362 (N.D.Okla.1961). And when such enforcement is attempted, the carrier cannot be denied his right to make every possible defense to a threatened curtailment of his business.

Nor does it particularly behoove the Government to charge laches on McCormack's part when the Commission's Bureau of Inquiry and Compliance itself has waited some ten years to institute proceedings limiting the plaintiff's operations; and this, despite the fact that the very decisions now cited by the Government clearly raised the possibility of an interpretive dispute.

The case of Smith & Solomon Trucking v. United States, 120 F.Supp. 277, (D.N.J.1954) also cited by the Government, wherein the plaintiff was found guilty of laches, is easily distinguishable. That case involved the belated claim of a carrier that because its initial application was improperly processed, its certificate should be expressly amended and enlarged. The Court felt such complaints about the award proceeding, made some twelve years later, were unreasonably tardy. Here, McCormack seeks no belated enlargement of an agreed upon authority. Rather, it challenges a Government Order, made for the first time, to curtail the present scope of its operations.

It is our conclusion that the plaintiff shipper cannot be considered estopped from challenging the Commission's cease and desist order because of his failure to institute on his own motion a plenary hearing on the scope of the Sub 70 Authority.

Further, we agree with McCormack's contention that its present owner, as a purchaser for value of the corporation, should be afforded even fuller protection under the Commission's established procedures, than might be afforded a participant in the original certification.

Finally, the defendants question the relevancy of McCormack's charge that the Commission's procedures below were inconsistent with those used to make similar interpretations in the past. Defendants not only deny that the particular rulings cited are precedent, but also make the broad assertion that any alleged inconsistency in the Commission's decision is of no interest to this Court. Defendants' Joint Brief, p. 27.

This assertion that inconsistency is beyond our purview must be qualified, for it challenges the basic philosophy of judicial review for administrative agencies. This philosophy seeks to allow the necessary free play for the agencies' expertise and discretion, while still preventing arbitrary decisions or chameleonic procedures from undermining the guarantee of Due Process.

Numerous cases are offered wherein the reviewing court approved variations in the ultimate conclusions of the Commission. For example, Virginian Ry. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463 (1926) and Georgia Public Service Commission v. United States, 283 U.S. 765, 51 S.Ct. 619, 75 L.Ed. 1397 (1931), dealt with the Commission's determination that proposed rates were reasonable in light of all the factors involved. In ABC Freight Forwarding Corp. v. United States, 169 F.Supp. 403, (1959, S.D.N.Y.) the Commission had merely asked a carrier to spell out the alleged benefits of the proposed extension of his certificate in greater detail than had been previously required. The District Court approved this departure since the substantial amount of existing service warranted closer scrutiny of proposed additions.

 These and other cases teach that the consistency of *stare decisis* is not required. This is understandable. The Commission must weigh endless applications and rate proposals in the context of an evolving transportation policy. That task requires that it be free from any judicially imposed strait-jacket of rigid consistency in either its judgments or the factors on which they are based. "[I]t is not estopped by its own precedents in the continuing regulation of a dynamic industry * * *." *ABC Freight*, supra, at 405. This freedom is not unlimited, however; if it were, judicial review would become a nullity.

The Court's task of upholding the rule of law is a delicate one. Great deference must be given an agency's delegated power to make policy in the course of adjudication. Precisely because of this deference, the courts can only prevent discrimination by requiring some minimum of consistency and rationality in the decision-making process. Indeed, the well established requirement that an agency articulate the rationale of each holding and the procedure by which it was reached stems from this safeguard. The judiciary need such an articulation in order to insure consistency. See SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

In Assoc. Transports, Inc. v. United States, 169 F.Supp. 769 (Eastern Dist. of Mo. 1958) cited by defendants, the Court dismissed a complaint of procedural inconsistency by distinguishing earlier cases, not by denying the need for consistency. Defendants also rely on Garford Trucking v. United States, 64 F.Supp. 780 (1940), where this Court considered the Commission's contention that consistency in its adjudication was not a legal requirement. Judge Forman acknowledged that the Court would not second guess the overall wisdom of the Commission's judgment. Defendants' Joint Brief, p. 27. However, while Judge Forman found no inconsistency on the part of the Commission, he still felt it appropriate to note an earlier series of decisions which taught that "Consistency in administrative rulings is essential, for to adopt different standards for similar situations is to act arbitrarily. * * * Republic Steel Corp. v. N.L.R.B., 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6, * * *." 64 F.Supp. at 786.

Union Cartage Company, Petition for Modification, MC–95490 (1962, not reported in full), is cited by McCormack to show the Commission's previous recogni-

tion of the implication of punctuation like that in the challenged certificate. Since that case, like many of the cases cited by defendants, dealt with commodity descriptions in technical language, supra at 534, it may also prove distinguishable.

■ Nonetheless, the minimum requirements of consistency still require the Commission to clearly explain its use of the prior record. For without such an explanation, that decision is only understandable as an unreasonable departure from well established Commission procedure. The Commission is not free to disregard or change those rules, and, using a faulty finding of "ambiguity", to resort to antecedent matters whenever it sees fit.

## V.

■ The primary responsibility for interpreting certificates rests with the Commission. Had that body exercised this responsibility in a clear manner and fully explained its intermediate conclusion that the certificate was "patently ambiguous", this Court would not question the ultimate interpretation of McCormack's authority.[12]

■ In retrospect, however, the Commission's own Report so effectively distinguishes precedents and so clearly disavows arguments which might support its decision that we are confused as to why it did go behind the certificate.

To review: the Commission found merit in McCormack's reasoning. It even defended the cogency of expert testimony by plaintiff's grammarian from Bureau attack. The Commission stated that disagreement between the parties was not necessarily proof of ambiguity in the legal sense, and further charged that the Bureau's non-grammatical construction had been too conclusory. It acknowledged that rules of grammar and punctuation are part of the Commission's ordinary tools of construction in the interpretation of certificates. More important, it admitted that the Doctrine of the Last

Antecedent which embodies those rules would be controlling, in the absence of legislative intent, as the "only relevant guide." Finally, the Commission distinguished earlier cases involving commodity descriptions, or other complex uses of trade parlance and terms of art requiring the Commission's expertise, on the grounds that the language in question was simple English. It found no logical reason for holding McCormack's interpretation inconsistent with Commission policy or practice.

Despite all these admissions, the Commission merely stated its Conclusion that the certificate was patently ambiguous and resorted to the prior record.

The Commission contends that the "canons of construction are not so automatic in their application, nor rules of grammar so tyrannical in their command that the Commission has no discretion in the matter of interpreting certificates issued under its authority." 89 M.C.C. at 14.

We agree. But the Commission has rebutted the more obvious reasons for avoiding the normal reading of the certificate. It must be prepared to tell us what reasoning or evidence was counterpoised against McCormack's position before the language was found ambiguous in the legal sense required.

A thorough search of the defendants' brief for any such reasons proves fruitless. The reasoning of the brief in that regard adds up to this: The Commission's judgment must not be disturbed because of its accumulated experience in this field.

This Court will always give full leeway to the Commission's expertise where it is relevant, and to its discretion when it is reasonably employed. In the case at bar, we do not attempt to substitute our judgment for that of the Commissioners, but merely to better understand the basis of their decision. As Justice Frankfurter warned, "The administrative process will best be vindicated by clarity in its exercise." Phelps Dodge

---

12. We need not pass here on the question of whether there was adequate evidence in the prior record to sustain that final construction once the certificate was deemed ambiguous.

Corp. v. National Labor Relations Board, 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271. Therefore, we find as follows:

(1) There was no adequate explanation for the Commission's conclusion that the territorial description of the Sub 70 Authority was ambiguous on its face.

(2) Absent such an adequately supported finding, the resort to antecedent matters was impermissable.

(3) To the extent that the Commission felt constrained to ignore the Doctrine of the Last Antecedent until the disputed phrase had been found ambiguous and the prior records had been admitted, the Doctrine was misapplied. Since those records were precluded from initial consideration by the Commission's own well founded procedures, the Doctrine, as well as its component grammatical and punctuation rules, was a factor to be fully considered in deciding whether there is patent ambiguity.

(4) This matter is hereby remanded to the Interstate Commerce Commission for further proceedings consistent with this opinion.

Counsel for plaintiff, T. I. McCormack Trucking Co., Inc., shall submit, on notice to counsel for all other parties an appropriate order.