**T. I. McCORMACK TRUCKING CO., Inc., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 314–67.**

United States District Court
D. New Jersey.
March 26, 1969.

———◆———

Peter E. Reilly, Jr., Jersey City, N. J., for plaintiff, Frank B. Hand, Jr., Washington, D. C., of counsel.

David M. Satz, Jr., Newark, N. J., for United States.

Robert W. Ginnane, Arthur J. Cerra, Steven Kazan, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Before McLAUGHLIN, Circuit Judge, and COOLAHAN and SHAW, District Judges.

COOLAHAN, District Judge:

This is an action to enjoin and set aside an August 5, 1966 Order of the Interstate Commerce Commission, wherein the Commission required plaintiff to cease and desist from certain operations conducted under its Certificate of Public Convenience and Necessity, known as "Sub 70 Authority," which was issued in 1948. The Commission charged that these operations exceeded the territorial authority allowed by the Certificate.

This court derives subject matter jurisdiction from 49 U.S.C. § 305(g), (h), and 49 U.S.C. § 17(9).

A similar complaint was first filed in this court by the plaintiff in 1962. Designated as Civil No. 681–62, it sought to enjoin and set aside a Commission Order of March 26, 1962, requiring plaintiff to cease and desist from certain operations. The matter was brought before a three-judge court, which determined, on February 4, 1966, that the Commission had not satisfactorily indicated to the court the basis upon which it had determined that the Sub 70 Certificate was ambiguous, thus permitting it to consider, in resolving the ambiguity, extraneous matters supposedly unfavorable to the plaintiff.[1] The case was remanded to the Commission "for further proceedings consistent with this opinion." See T. I. McCormack Trucking Co. v. United States, 251 F.Supp. 526, 541 (D.N.J.1966). On remand, it was the opinion of the Commission that there hadn't been any ambiguity after all; instead, it concluded on August 5, 1966 that the disputed language really involved technical terms of art, the interpretation of which was subject to its own peculiar expertise. Applying that expertise, it was the conclusion of the Commission that plaintiff had in fact violated the rights granted to it by the Sub 70 Certificate.

Challenging the Commission's August 5 Order plaintiff alleges that: 1) the Order was illegal, in that the Commis-

---

1. As stated in the first *McCormack* opinion, 251 F.Supp. at 529–530:

The ultimate question before the Court is a simple one: Namely, to how many States does the restriction, "within 100 miles of Columbus Circle" refer? However, that question is complicated by a threshold dispute over the Commission's procedure. The Commission resorted to matters outside the four corners of the certificate to aid its interpretation McCormack contends that this resort contravened the Commission's own well-established rule for construing permits and certificates.

The rule in question arose from the need to protect legitimate expectations based on Commission actions. In order to afford the certainty and continuity essential for both carriers and the shipping public in such an extensively regulated industry, reliance on the language of an operating certificate must not go unrequited. Accordingly, absent a patent ambiguity on the face of the document, the Commission will not permit reference to extraneous matters to show that the service apparently permitted by the terms of the certificate in fact exceeds the authority actually granted.

sion, in promulgating it, went outside of the terms of this court's remand to it of February 4, 1966; 2) the Order, even if permissible under this court's remand, was improper in its determination that the interpretation of the Sub 70 Certificate involved an interpretation of technical terms of art and hence was subject to only the most limited judicial review. It being the court's view that the plaintiff's second contention is meritorious, a decision in this matter will be rendered in favor of the plaintiff.

It would be best at this point to make reference to the specific language of the Sub 70 Certificate which is in question here. That provision indicates that plaintiff could ship

> Between points in Connecticut, Pennsylvania, *New Jersey, and New York within 100 miles of Columbus Circle, New York, N. Y.,* on the one hand, and, on the other, points and places in Connecticut, Delaware, Maryland, Massachusetts, Pennsylvania, New Jersey, New York, and Rhode Island. (Emphasis added.)

As noted in the earlier McCormack decision,

> the specific question at issue is whether the italicized phrase "within 100 miles of Columbus Circle, etc.," modifies only the State of New York, as urged by McCormack, or all of the States in the preceding series, as concluded by the Commission.

251 F.Supp. at 528–529.

Initially, it must be noted that, as a matter of grammatical construction, there can be no question but that the 100-mile provision in the Sub 70 Certificate applies only to New York. Whether the grammatical rule be designated as the "Doctrine of the Last Antecedent," or as a matter of simple common sense, the absence of a comma after the Certificate's first reference to "New York" indicates most clearly that this is

the case. As a result, all that remains for consideration is the Commission's contention that the effect to be given to its own special expertise in construction of technical terms of art compels that this court defer to it in a case of simple grammatical construction such as is presented here.[2]

That contention was dealt with thoroughly in the first *McCormack* opinion, 251 F.Supp. at 534–536, where strong distinction was made between Commission construction of "commodity descriptions" and Commission construction of territorial descriptions. In the case of the former, it was pointed out, there is involved "an area wherein the Commission's great familiarity with customary trade usage and with industry-wide understanding of prior Commission interpretations is critical." As a result, it was concluded, wide latitude should be given to Commission interpretation of commodity descriptions. However, in the case of Commission construction of territorial descriptions, such as are involved in the McCormack matter, it was pointed out, with citation to the Commission's own statements in its original Order of March 26, 1962:

> "The disputed language in McCormack's certificate is non-technical in nature. *There is no apparent reason for example, why a similar territorial description in a statute or contract should be given any different meaning,* * * * no policy or presumption favoring a liberal or strict construction for the purpose of granting a larger or smaller quantum of operating authority. (Emphasis supplied). 89 M.C.C. at 10."

251 F.Supp. at 536. This court continues to believe that the conclusion reached in the original *McCormack* decision was a cogent one; as a result, no great deference will be paid to the Commission's rather unusual reading of the

2. In framing the issue in such a manner, the court, of course, does not find it necessary to consider the merits of the Commission's attempted invocation of its "ex-

pertise." On this question, see the dissenting opinion of Commissioner Webb, 102 M.C.C. at 583.

Sub 70 Certificate. The court holds that, as a matter of law, the Certificate permits plaintiff to deal in Connecticut, Pennsylvania, and New Jersey, without reference to the 100 mile limitation contained therein, which applies only to operations in New York State.

The Order of the Interstate Commerce Commission dated August 5, 1966 will be set aside and enjoined.

Let an appropriate order be submitted.

SHAW, District Judge (concurring).

I concur in the conclusion reached by Judge Coolahan that the order of the Interstate Commerce Commission dated August 5, 1966, should be set aside and enforcement enjoined.

GERALD McLAUGHLIN, Circuit Judge (dissenting).

The background of this litigation is of plenary importance to the proper resolving of the problem it presents. That background must not be swept under the rug.

Plaintiff was originally granted a certificate on March 26, 1948, for transportation of noninflammable liquid commodities with some named exceptions over irregular routes. The certificate read "Between points and places in Connecticut, Pennsylvania, New Jersey and New York within 100 miles of Columbus Circle, N. Y. including New York, N. Y., on the one hand, and, on the other, points and places in Connecticut, Delaware, Maryland, Massachusetts, Pennsylvania, New Jersey, New York, and Rhode Island." Plaintiff had no misunderstanding of the territory it received by said certificate. In its letter to the Commission of December 5, 1947, it affirmatively stated that the rights it had been allowed were "between all points in the states of New York, New Jersey, Connecticut and Pennsylvania within 100 miles of New York, N. Y. on the one

hand and all points in the states of Massachusetts, Connecticut, Rhode Island, New York, New Jersey, Pennsylvania, Delaware and Maryland on the other." It is vital to note here that this formal acknowledgement by plaintiff carrier of the complete geography of its territorial grant has never been repudiated by plaintiff; it is not mentioned in either of its briefs; nor was a word said about it in oral argument for the plaintiff. On August 1, 1949, plaintiff corporation underwent a change of ownership. Well within a year thereafter, on May 24, 1950, the Commission, obviously with some suspicion that McCormack might be operating in larger territory than allowed by its certificate, through its District Director notified plaintiff by letter that "it is my definite opinion that the words 'within 100 miles of Columbus Circle, N. Y.' applies to all four of the above mentioned states and not to New York only." Following that, plaintiff's certificate was collaterally involved in four formal Commission proceedings in which plaintiff sought to be recognized as a "protestant". These were decided in 1952, 1955, 1956 and 1959.[1] In all of them the Commission ruling regarding the extent of plaintiff's certificate, was exactly the same as its original interpretation of the limits of the certificate when it issued the latter. Plaintiff in the 1956 case admitted, as the Commission found, " * * * that it never sought in the applications leading to the questioned certificate, authority to serve all points in Connecticut, New Jersey, and Pennsylvania, * * *." Plaintiff there claimed that the Commission, after allowing the certificate, found a need for more service and granted plaintiff a larger area than given in the said certificate. There was no support for that assertion in any Commission record.

In 1960 there was an investigation by the Commission to determine whether

1. P. B. Mutrie Motor Transportation, Inc., Extension—Chocolate, 54 M.C.C. 838 (not printed in full) (1952); P. B. Mutrie Motor Transportation, Inc., Extension— Various Points, 66 M.C.C. 818 (not printed in full) (1955); P. B. Mutrie Motor Transportation, Inc., Extension—Bainbridge, New York, 69 M.C.C. 161 (1956); Coastal Tank Lines, Inc., Extension—Riverside, 81 M.C.C. 600 (1959).

plaintiff had been operating beyond its certificated authority. This resulted in the conceded fact that plaintiff had been engaged in interstate transportation beyond the limits of its certificate, as the Commission had determined said limits, from the date of its issuance. The Commission Examiner who had conducted the Investigation Hearings found that the Commission interpretation was correct and that the broader territory claim advanced on behalf of McCormack Co. was erroneous. Division One of the Commission reviewed the investigative proceedings. It considered that the plaintiff's certificate was ambiguous and that therefore it was necessary to check out the entire record of the certificate in an effort to arrive at a firm conclusion of the specific area it had allowed plaintiff. After so doing, the Division held:

"Examination of the record of the Sub-No. 70 proceeding leaves no doubt that McCormack did not apply for the authority it now claims; that no evidence was adduced in support of a grant of such authority; that McCormack did not expect to receive such authority; that McCormack did not believe, at the time the certificate was issued, that it had received such authority; and that the Commission intended to authorize operations only from such points in Connecticut, New Jersey, and Pennsylvania that are within 100 miles of Columbus Circle, N. Y. All this is virtually conceded by McCormack. * * *" (89 M.C.C. at 16).

Plaintiff then started its first action in this Court which was to review Division One's holding. Briefs were filed and oral argument had in due course. On February 7, 1966, the Court filed an amended opinion, 251 F.Supp. 526, which takes up fourteen and a half double column pages in said volume. Early in the opinion the Court found that absent a patent ambiguity in the certificate the Commission could not refer to proofs other than the certificate itself. It correctly stated that the reason for the Commission examining the full record of the said certificate was because its Division One had concluded that the critical language of the certificate was so ambiguous that there was need to ascertain if possible from the record just what had been the intent of the Commission in its grant. The Court seemingly had no difficulty in agreeing with the general principle that the prior record of the certificate itself if it did reveal the necessary facts would ordinarily control in determining the true meaning of the certificate as conceived by the Commission in its issuance. However, in this instance the Court ruled that the record, presumably no matter if it did include the true solution to the problem of its geographical limits, was not available for use in that respect under Commission rules. The Court specifically noted in its opinion p. 533, that its reason for refusing permission to use the certificate record was because of "the Commission's own rule strictly limiting use of *'legislative history'*." (Emphasis supplied). Such a ruling was certainly no bar to reliance upon the foundation facts which could not be distorted. Those facts start with the irrefutable identical interpretation by the Commission of the certificate from its allowance down to and including the case which was then before the Court. The so called "bar" did not exclude the bringing to light of the formal acceptance by plaintiff of the Commission understanding of its own document. That acceptance remains undenied through the years. All that plaintiff has done about it is to try to ignore it. The same tactics have prevailed with reference to the Commission's four proceedings in 1952, 1955, 1956 and 1959 where the Commission insisted that plaintiff stay within the bounds of its certificate as the Commission had fixed them when it issued that document and had so ruled ever since. It is interesting to realize that McCormack in its first appeal to this Court asserted that its new interpretation was sound grammatically and therefore that a finding of ambiguity was precluded. It is also interesting that in the same first case re this cer-

tificate which reached this Court and where McCormack relied primarily on the last antecedent doctrine, Division One had concluded that if the last antecedent could ever be applicable, it would be where there was patent ambiguity. Concluding that type of ambiguity existed, the Division, instead of using as a sole guide line that at best iffy last antecedent method, exhaustively searched the record. There it found the compelling evidence which firmly established the meaning of the certificate when it was allowed; that said meaning had been agreed to by McCormack; that immediately after it had obtained the certificate plaintiff started to expand its territory; that the Commission throughout the nineteen fifties held firmly to its original territory allowance and refused to permit plaintiff to take over areas to which it was not entitled.

Finally, after considerably more discussion, the 1966 Court opinion held that the Commission should "clearly explain its use of the prior record." The opinion goes on to say p. 540:

"The primary responsibility for interpreting certificates rests with the Commission. Had that body exercised this responsibility in a clear manner and fully explained its intermediate conclusion that the certificate was 'patently ambiguous', this Court would not question the ultimate interpretation of McCormack's authority.

\* \* \* \* \* \*

"In the case at bar, we do not attempt to substitute our judgment for that of the Commission's but merely to better understand the basis of their decision."

The Court also stated p. 541 that the last antecedent doctrine was a factor to be fully considered in deciding whether there is patent ambiguity. The suit was remanded to the Commission for further proceedings consistent with the opinion. The McCormack attorneys were directed to submit an appropriate judgment and decree. The proposed judgment and decree were filed as submitted by the McCormack lawyers.

In accordance with the remand the Commission reopened the litigation. *It filed its full Commission Report and Order* on September 14, 1966. The Report disagreed with its Division One in the latter's finding that a patent ambiguity exists in the McCormack certificate. It held that, "The territorial description in McCormack's certificate is clear and unambiguous on its face, as the phrase 'within 100 miles of Columbus Circle, N. Y.' applies equally to all 'points and places in Connecticut, Pennsylvania, New Jersey and New York.' Despite the absence of a comma before that phrase, we believe that McCormack had no reasonable basis for contending that its authority to serve points and places in Connecticut, Pennsylvania and New Jersey is more extensive than its authority to serve points and places in New York."

With reference to the disputed language in the certificate the Commission found that, "While each of the words making up the phrase in question is not a technical word of art, collectively the words have a definite and distinctive meaning when used in the context here considered." The Commission detailed at length the mechanics of stating the grant. In accordance with the Court directive it also examined "the doctrine of the last antecedent in the light of the language involved" and found that it " \* \* \* supports our conclusion that the disputed phrase applies to points and places in all four named States." Regarding this it stated:

"As previously indicated, a qualifying phrase is to be applied to the word or phrase immediately preceding rather than to more remote words or phrases, *unless such extension is clearly required by the context of the language in question* and the presence of a comma separating a modifying clause from the word or clause immediately preceding is an indication that the modifying clause was intended to modify all preceding clauses rather than the last antecedent clause. *Here, the context and nature of the language in question require application of the phrase*

*'within 100 miles of Columbus Circle, N. Y.' to the phrase 'points and places.'"* (Emphasis supplied).

The Report concluded with the holding:

"On further consideration, we find that respondent McCormack is not authorized to transport non-inflammable liquid commodities between those points in Connecticut, Pennsylvania, and New Jersey, which are situated in excess of 100 miles from Columbus Circle, N. Y., on the one hand, and, on the other, points in Connecticut, Delaware, Maryland, Massachusetts, Pennsylvania, New Jersey, New York, and Rhode Island."

McCormack Trucking Co. as in its 1966 claim, sought review of the above Commission findings by filing the complaint in the instant suit which is now before this Court for decision. The Court opinion which concludes that the Commission order of August 5, 1966 "be set aside and enjoined", relies solely on its finding that "the (Commission) Order even if permissible under this court's remand, was improper in its determination that the interpretation of the Sub 70 Certificate involved an interpretation of technical terms of art and hence was subject to only the most limited judicial review. It being the court's view that the plaintiff's second contention (above) is meritorious, a decision in this matter will be rendered in favor of the plaintiff." The Court says in connection with this "Initially it must be noted that, as a matter of grammatical construction, there can be no question but that the 100-mile provision in the Sub 70 Certificate applies only to New York. Whether the grammatical rule be designated as the 'Doctrine of the Last Antecedent' or as a matter of simple common sense, *the absence of a comma after the Certificate's first reference to 'New York' indicates most clearly that this is the case. As a result, all that remains for consideration is the Commission's contention that the effect to be given to its own special expertise in construction of technical terms of art compels that this*

*court defer to it in a case of simple grammatical construction such as is presented here."* (Emphasis supplied).

What we have before us is a 1948 certificate of public convenience and necessity issued by the Interstate Commerce Commission. The unquestioned intent of the Commission was to apply the hundred mile limitation to all points and places in the four states named in the document. Because of the involved irregular routes allowed, the certificate was obviously not easy to draft; to a layman that task could well have been nigh impossible. Even so, as we have seen, the Commission never contended that each of the words in the "within 100 hundred miles of Columbus Circle, N. Y. * * *" phrase were technical words of art but does say and has established that "Collectively the words have a definite and distinctive meaning in the context here considered." As such and having in mind that in this connection the uncontradicted intent of the Commission as to the content of the certificate was to include all four states of the certificate within the hundred mile limitation of Columbus Circle, it was not only "common sense" but high level specialized judgment to use the Commission rightly recognized expertise to make sure that the language chosen supported the Commission's purpose. That was only the beginning of the firm, unalterable designation of the routes allowed by the granting Authority. McCormack Company which had applied for and had received the said certificate knew exactly what the Commission had allowed in its territorial designation. McCormack formally verified that in writing and under those precise conditions accepted the certificate as drafted and without reservation. Not long after that, definitely at least by the time its new ownership took over, plaintiff was deliberately transporting interstate freight over routes beyond the scope of its certificate. Plaintiff has persisted in that course down to and including this moment. It never brought a proceeding before the Commission in an effort to vindicate its

action. The only reason it appears here as plaintiff is because it is again in effect appealing from a Commission decision upholding the certificate as granted.

We have seen how McCormack in the beginning contended that the Commission by some mysterious informal wave of the hand allowed plaintiff the additional routings. In passing, that of itself is the strongest possible admission that the original, sharply limited certificate meant what the Commission had always maintained it did. Having made no progress with its enlargement allegation, McCormack came into this Court in its 1966 appeal with a new proposition. It produced a person described in the prior court opinion as a "linguist". He, from the absence of a comma after the first "New York" in the phrase involved, concluded that McCormack was given unrestricted rights in all four states. The "New Standard Dictionary of the English Language" (1944) states the prime meaning of linguist to be "an adept in languages; one who is acquainted with several languages". The second meaning of the word is given as "a student of the history or science of language; a philologist". This particular linguist has no Interstate Commerce Commission experience whatsoever. There is no suggestion that he has any understanding of irregular routings. The linguist's pronouncement is seconded by four attorneys also produced on behalf of the plaintiff. At oral argument the main reliance for the plaintiff for the comma disposition was stated as the truly scholarly H. W. Fowler in his book "Modern English Usage" (1965 Ed.) p. 588. However, there is no mention of Fowler in plaintiff's briefs. What Fowler deals with on p. 588 and also on pp. 587 and 589 is the murky comma world. The most Mr. Fowler and his revisionist suggest is the recasting of sentences instead of using the crude device of the intrusive comma. On p. 588, it is said "In ambiguous appositions. Insertion or removal of commas is seldom a sufficient remedy, and indeed it is usually impossible. The

thing is to remember that arrangements in which apposition commas and enumeration commas are mixed up are dangerous and should be avoided."

Amazingly there is no mention either, oral or written by plaintiff of the great American authority in this field, Wilson Follett. The latter's definitive book "Modern American Usage" (1966) is of much the same view as Fowler. Follett lays the comma to an uneasy rest at p. 401, saying "The comma can cause trouble equally by its absence, by its presence, and by wrong placement." Neither Fowler nor Follett ever intimate that a comma quibble in circumstances as those before us should ever be given serious attention.

The certificate, intended to be granted by the Commission and so granted in 1948, down to and through the current litigation has never been attacked as unreasonable. And there is no claim that the Commission has ever varied from its 1948 view of its grant. Plaintiff, having agreed to and accepted the original territory, later desiring more, simply took it. Its unfounded statement that the Commission merely closed its eyes, went beyond its statutory grant, beyond its authority and extended the area allowance, just fell apart and is not here referred to by plaintiff. Instead came the incredible argument that despite the Commission's intention, the plaintiff's acquiescence and the fact that the Commission had always upheld its 1948 position completely, nevertheless, because of the absence of at best a most questionable comma, the certificate, which contained what the Commission intended to grant and did grant and what plaintiff intended to receive and did accept, is to be construed twenty years after it was allowed in a manner significantly different from what the Commission gave and what the plaintiff knowledgeably was given.

There has been nothing arbitrary, capricious or clearly erroneous in the Commission's actions throughout the twenty years of this certificate. There is no excuse in this case to allow the desperate

use of a "dangerous comma" to reverse a decision of the Commission which was soundly within its discretion.

I would affirm the decision of the Commission.

