**CAPE AIR FREIGHT, INC., a corporation, Petitioner,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Respondents,**

**Pinto Trucking Service, Inc., Intervenor.**

**No. 77–1617.**

United States Court of Appeals, Tenth Circuit.

Argued Nov. 16, 1978.

Decided Dec. 15, 1978.

M. Warren McCamish, Jr., Kansas City, Kan. (Blake A. Williamson, Donald A. Hardy, Kansas City, Kan., Louis J. Amato, Bowling Green, Ky., and Williamson, Cubbison, Hardy & Hunter, Kansas City, Kan., with him on the briefs), for petitioner.

John H. Shenefield, Asst. Atty. Gen., John J. Powers, III, Edward E. Lawson, Attys., Dept. of Justice, Mark L. Evans, Gen. Counsel, Henri F. Rush, Associate Gen. Counsel, Wayne M. Senville, Atty., I.C.C., Washington, D. C., submitted on briefs for respondents.

Gerald K. Gimmel, Gaithersburg, Md. (Gimmel & Weiman, Gaithersburg, Md., with him on the brief), for intervenor.

Before SETH, Chief Judge, and BREITENSTEIN and LOGAN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Cape Air Freight, Inc., petitions for review of a cease and desist order of the Interstate Commerce Commission, ICC. Cape is a certificated motor carrier of freight. The issue is whether the proscribed operations are within the authority granted to Cape. We have both jurisdiction and venue. See 28 U.S.C. §§ 2342 and 2343. We affirm the ICC order.

In December, 1975, ICC brought suit against Cape in the United States District Court for the District of Kansas to enjoin the operations here in question on the ground that they were beyond the authority granted in the ICC certificate. In April, 1976, Pinto Trucking Service, Inc., interve-

nor herein, filed a complaint with ICC asking that Cape be ordered to stop the same operations because they were unauthorized. The injunction suit and the ICC administrative proceedings went forward contemporaneously.

Cape asserted to ICC that it should not be subjected to duplicate litigation on the same issue. The objection was overruled on the ground that Pinto had presented the matter in accordance with ICC rules and "has qualified to have its complaint heard in the forum it has selected." App. p. 209. If the ICC rules permit such duplicate litigation as is here presented, consideration should be given to an appropriate change. Applications by ICC for enlargements of time for court filings are largely based on pressure of work. The court's docket is overloaded. We suggest that every effort should be made to avoid duplicate litigation. Be that as it may, after the instant case had been in the court of appeals for over a year, ICC moved in the district court to have the case there held in abeyance until after the decision of the court of appeals in this case. The motion was granted. In the circumstances, we shall consider the case before us on its merits.

The controlling question is whether the certificate granted to Cape authorizes radial or nonradial operations. In its 1937 decision on Classification of Motor Carriers of Property, 2 M.C.C. 703, 709, ICC defined irregular route radial service as transportation of property

"over irregular routes from a fixed base point or points to points or places located within such radial area as shall have been fixed and authorized * * * in a certificate * * * or from any point located within such radial area to such carrier's fixed base point or points."

Irregular-route nonradial service is defined, Id. as transportation

"over irregular routes between points or communities located within such general territory as shall have been defined geographically and authorized in a certificate * * * and any other points or communities located within the same general territory without respect to a hub community or a fixed base point of operation."

Radial authority permits the transportation of freight between points in two or more geographically described areas but does not permit the transportation of freight between points located wholly within one of the described areas. This latter transportation is called cross-haul. For example, a grant of radial authority between points in state A on the one hand, and, on the other hand, points in states B and C would permit transportation between states A and B, and between states A and C. It would not permit transportation between states B and C. A nonradial grant of authority would permit cross-haul between states B and C. As can readily be seen, nonradial authority is broader than radial authority.

The ICC has consistently recognized the difference between radial and nonradial authority. E. g. the 1967 decision in Fox-Smythe Transportation Co. Extension—Oklahoma, 106 M.C.C. 1, 26–27. The 1973 decision in Gateway Elimination stated the distinction thus, 119 M.C.C. 170, 180–181, n. 6:

"Irregular-route operating rights may be granted either as a 'from-to' authority as 'from Philadelphia, Pa. to points in Kentucky', or as 'between' authority. There are two basic types of 'between' authority: radial and nonradial. A nonradial authorization, as 'between Philadelphia, Pa., and points in Kentucky and Tennessee, enables service between all points in the two named States and the named city. A radial authority reading 'between Philadelphia, Pa., on the one hand, and, on the other, points in Kentucky and Tennessee' allows service from Philadelphia to points in the two named States and from points in the two named States to Philadelphia, but not between points in Kentucky and Tennessee. Each of these grants of authority, it must be remembered, was framed so that the service authorized would be carefully tailored to the public need established on a public record."

The Cape certificate, MC–134906 Sub 7, see, App. 197–198, authorizes transportation of general commodities, with specified exceptions, over irregular routes,

"(1) BETWEEN Cape Girardeau Municipal Airport at or near Cape Girardeau, Mo., and points in that part of Ohio on and east of Interstate Highway 77, Wheeling, Williamson, Parkersburg, Point Pleasant and Valley Grove, W. Va., Bristol, Va., and points in that part of Pennsylvania on and west of U. S. Highway 219.

(2) BETWEEN Cape Girardeau Municipal Airport, Cape Girardeau, Mo., points in that part of Ohio on and east of Interstate Highway 77, and points in that part of Pennsylvania on and west of U. S. Highway 219, on the one hand, and, on the other, points in that part of Pennsylvania east of U. S. Highway 219, and points in Maryland, Delaware, New Jersey, New York, Vermont, New Hampshire, Massachusetts, Connecticut, and Rhode Island, and the District of Columbia."

Cape published rates and conducted cross-haul operations between points in Maryland, nine other states, and the District of Columbia without respect to a hub community or fixed base of operations. Simply stated, it conducted nonradial operations in the mentioned territory.

Pinto claims, and ICC held, that Sub 7(2) authorized operations only between the mentioned territory and points in the area described as "Cape Girardeau Municipal Airport, Cape Girardeau, Mo., points in Ohio on and east of Interstate Highway 77, and points in Pennsylvania on and west of U. S. Highway 219." In other words, the authorization was radial, between designated areas.

Sub 7(1) authorizes nonradial transportation to and from points in the described area. Except for the named cities in West Virginia, the territory described in (1) is used in (2) as one area of a radial grant. The other named points, including those in eastern Pennsylvania, nine named states, and the District of Columbia are the second area of the radial grant. Cape argues that the language used permits cross-haul operations in the second area. In describing the second area, the authorization designates certain points including points in Pennsylvania "east of U. S. Highway 219, *and points* in Maryland," nine other states and the District of Columbia. (Emphasis supplied.) The insertion of the comma before the phrase "and points" is emphasized. The presence of the comma does not impress us. Punctuation is not a precise system of uniform application. "The comma can cause trouble equally by its absence, by its presence, and by wrong placement." Follett, Modern American Usage (1966); p. 401.

The phrase "and points in" was an unnecessary repetition probably intended to reinforce the fact that the modifying phrase "east of U. S. Highway 219" refers only to Pennsylvania. Cape construes (2) as a grant of both radial and nonradial authority. The result is illogical because it would place a radial grant between two nonradial grants, that found in (1) and that claimed by Cape as arising from the language after the comma. The fair interpretation of (2) is that all the points mentioned after the phrase "on the other" are points within one geographic area of a radial grant.

Cape contends that the methods employed by the administrative law judge departed radically from prior ICC rulings and hence were arbitrary, capricious, and void. In acting on Cape's exceptions to that ruling, ICC Review Board No. 4 deleted those portions of the judge's decision relating to a latent ambiguity, the record in the underlying proceeding which resulted in the issuance of the certificate to Cape, and the discussion of rules of grammar. See App. beginning on line 13, p. 211 and ending on line 3, p. 214; see also App. 230–231.

The Review Board held that the plain meaning of paragraph (2), Sub 7, of the certificate "authorizes the radial transportation of certain commodities between base points and points in a described radial area and does not support the interpretation urged by defendant which would permit cross-hauls within the described radial

area." The Review Board also said that this interpretation of the certificate "is consistent with the unambiguous language used in granting radial authority, in a single paragraph in the customary fashion and with Commission precedent." App. 229.

Our concern is with the Commission decision, not with the deleted portions of the decision of the administrative law judge. To support its claim of inconsistent and arbitrary action by ICC, Cape relies on the *T. I. McCormack* line of cases. See *T. I. McCormack Trucking Co., Inc.—Investg. & Revoc. of Certificates*, 89 M.C.C. 5, rev'd D.C., 251 F.Supp. 526; 102 M.C.C. 577, rev'd D.C., 298 F.Supp. 39; 110 M.C.C. 499. The certificate at issue in those cases authorized transportation between points in Connecticut, Pennsylvania, New Jersey, and New York within 100 miles of Columbus Circle, N.Y., including New York, N.Y., on the one hand, and, on the other, points and places in Connecticut and seven other named states. The question was whether the phrase "within 100 miles of Columbus Circle, N.Y." applied to the four preceding states or only to New York. The district court considered the rule of grammar known as the "Doctrine of the Last Antecedent" and held that the phrase applied only to New York. *T. I. McCormack Trucking Co. v. United States*, D.C.N.J., 251 F.Supp. 526, 531, and D.C., 298 F.Supp. 39, 41. In the Cape certificate, no modifying clause makes the rule applicable. Cape does not have a territorial grant or authority that is restricted by any word, clause or phrase.

Cape argues that the *McCormack* decisions hold that territorial descriptions in a certificate are non-technical in nature and not based on words of art. See 298 F.Supp. at 41. The ICC has held that the words "on the one hand, and, on the other," are words of art used to describe a radial authority between a base point and points in a second described geographical area. See 102 M.C.C. at 581. This interpretation has been upheld. See *King Van Lines, Inc. v. United States*, D.C.Kan., 220 F.Supp. 551, *Cardinale Trucking Company v. United States*, D.C. N.J., 232 F.Supp. 339, 346–347, and *Interstate Commerce Commission v. Southwest*

*Freight Lines*, D.C.W.D.Mo., 86 F.Supp. 587, 591, affirmed 8 Cir., 184 F.2d 149.

We recognize that consistency in administrative rulings is essential to avoid arbitrariness. See e. g. *National Labor Relations Board v. Mall Tool Co.*, 7 Cir., 119 F.2d 700, 702; and *Garford Trucking, Inc. v. United States*, D.C.N.J., 64 F.Supp. 780, 786. The ICC decision in the instant case is not inconsistent with the *McCormack* decisions. Instead it follows the uniform ICC practice with regard to radial and nonradial authorization in certificates. We find no ambiguity in the certificate. The decision of ICC is not clearly erroneous. See *Burlington-Chicago Cartage, Inc. v. United States*, D.C.S.D.Ill., 178 F.Supp. 857, 862, affirmed per curiam, 362 U.S. 401, 80 S.Ct. 812, 4 L.Ed.2d 864. An administrative interpretation must be accepted unless there are compelling indications that it is wrong. *Marathon Oil Co. v. Kleppe*, 10 Cir., 556 F.2d 982, 986. We are convinced that the ICC interpretation of the certificate which it granted Cape is correct.

The decision of the Interstate Commerce Commission is affirmed.